## McTaggart's Bottler's License.

*Liquor laws—Bottler's license—Scope of bottler's license.*

A bottler's license does not confer the right to sell other intoxicating beverages than those specified in the Act of April 20, 1858, P. L. 365, viz.: cider, perry, ale, porter and beer.

Argued Dec. 7, 1906. Appeal, No. 183, Oct. T., 1906, by George McTaggart, from order of Q. S. March T., 1905, No. 504, revoking a bottler's license. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Rule to revoke bottler's license.

SULZBERGER, P. J., filed the following opinion:

This is a rule to revoke McTaggart's license as a bottler on the ground that he has bottled and sold whiskey, and that such selling is not authorized by law.

Having paid his license fee of $500 under the Act of July 30, 1897, P. L. 464, he contends that he has acquired the right of bottling liquors of all kinds and selling the same provided that he does not sell less than a quart.

If mere etymological considerations controlled, there would be force in the contention. The proposition that a bottler is " one who bottles " is so direct and simple that it invites acquiescence. But the question cannot be disposed of so summarily. We are not concerned here with the mere shape or material of a vessel in which drink is sold, but with the interpretation of statutes which, on one side at least, are revenue laws, and deal with taxes on venders by whatever name they may be conventionally designated.

Our modern system of regulating and taxing the liquor traffic in this commonwealth rests on the broad foundation of the Act of March 31, 1856, P. L. 200, entitled " An act to regulate the sale of intoxicating liquors." It is a statute drawn with exceptional care, contains thirty-five sections, and was intended and adapted for the restriction of a traffic the suppression of which was earnestly advocated by many citizens. No provision was contained in it regulating or taxing either the manufacture or the possession of liquor of any kind. Vending was the only subject considered. The classification found in the act of 1856, is, therefore, merely a differentiation more or less arbitrary of all venders into several classes by various names, to wit: importers, venders, distilleries, breweries, keepers of hotels, inns and taverns, and keepers of eating houses. All these were subject to license taxes. The thirty-second section of the act,

however, dealt especially with a class of venders of liquors by excepting them from the duty incumbent on others of procuring a license. This class was composed of persons " pursuing exclusively the business of bottler of cider, perry, ale, porter or beer, and not at the same time following or engaging in any way in the business of keeping any hotel, inn or tavern, restaurant, oyster-house or cellar, or place of entertainment, amusement or refreshment." It was " provided, that such persons shall not sell or deliver said cider, perry, ale, porter or beer in less quantities than a dozen bottles at one time, nor permit any of said liquors to be drank upon the premises occupied in said business."

The natural inference from this is that the legislature deemed it for the advantage of the commonwealth to foster the traffic which it thus exceptionally favored. This legislative intent was but an affirmation of a policy initiated five years before. Section 8 of an omnibus bill approved April 14, 1851, provided " that no bottler of cider, perry, or malt liquors, who does not pursue the business of a tavern-keeper, shall be hereafter required to take out a license as a tavern-keeper." When the act of 1856 was passed, this brief section was naturally deemed insufficient, but the fact that it was expanded into section 32 and that the protection was made unequivocal and sure shows the determination of the legislature to foster the sale of malt liquors in order to displace the use of ardent spirits.

There is a significant indication of this view in section 3 of the same act of 1856. After providing for the licensing of breweries and distilleries, classified together, there is a proviso that such license shall not authorize sales by them of less than five gallons " except malt and brewed liquors, which may be bottled and delivered in quantities not less than one dozen bottles." The distiller was thus denied a privilege granted to the brewer; the minimum established for the brewer's sale was reduced to about one-fourth the quantity of the distiller's minimum, though the strength of the latter's liquor was fifteen times greater.

" On April 20, 1858, the legislature passed a supplement to the Act of 1856, P. L. 365. Section 8 of this supplement practically re-enacted the 32d section of the act of 1856, making it, however, a little more explicit by adding the requirement

that bottlers shall " not be otherwise engaged in the sale of in-
toxicating liquors," and thus the law stood when the High
License Act was passed May 24, 1887, P. L. 194.  By sec. 3
of that act it was provided " that all bottlers within the com-
monwealth shall be required to procure license from the court
of quarter sessions of the respective counties in which they are
located, in the manner provided for in the second section of
this act, for which they shall pay the sum of $200 in cities
of the first, second and third classes, $100 in all other cities,
boroughs and townships : Provided, that no bottler shall be
permitted to sell spirituous, vinous, malt or brewed liquors to
be drank upon the premises where sold, nor at any place pro-
vided by such seller for that purpose."

In the light of what has been said this seems clear enough.
The word "bottler" was not defined, because it needed no
definition.  The whole class was distinctly identified as al-
ready existing ; reference was made to the " counties in which
they are located ; " the fact that they had hitherto paid no li-
cense tax is implied by the words used, viz. : " that all bottlers
within the commonwealth shall be required to procure license,"
a form of expression radically different from that used concern-
ing the other classes of venders dealt with by the first section
of the same act.  There the phraseology is " that all whole-
sale dealers, brewers, distillers, rectifiers, compounders, store-
keepers and agents . . . . shall pay . . . . an annual license
in cities of the first, second and third classes, the sum of
$500. . . ."  Not a word is said about their being required
to procure license.  The legislature was dealing with notorious
actual conditions.

We entertain no doubt whatever that the " bottler " of the
act of May 24, 1887, is the " bottler " described in the eighth
section of the act of April 20, 1858, namely, a man who bot-
tles and sells cider, perry, ale, porter or beer, and who is not
otherwise engaged in the sale of intoxicating liquors.

As no reference is made in the act of 1887 to the sale of
cider or perry (pear cider) it would appear that all regulation
or limitation of the sale of those articles was repealed, and
that they may now be dealt in as freely as any other mer-
chandise.

The only modification of the privileges of the bottler under

the act of 1887 was the changing of the minimum sale from one bottle to one quart, which was by the Act of June 9, 1891, P. L. 257, raised to twelve pint bottles, thus practically restoring the minimum of the act of 1856.

Some stress was laid upon the proviso of the Act of 1887, sec. 3, P. L. 194, that bottlers should not "be permitted to sell spirituous, vinous, malt or brewed liquors to be drank upon the premises where sold, nor at any place provided by such seller for that purpose." From this the inference was sought to be drawn that the right of the bottler to sell spirituous and vinous liquors was of the same rank as his right to sell malt or brewed liquors.

The history of the "bottler" shows that ever since the act of 1856 this prohibition against allowing any liquors to be drank upon his premises attached to him, and that the legislature in the act of 1887 was so closely following the act of 1856 that it copied even the anomalous form of the participle "drank."

Moreover, the general office of a "proviso" is rather to limit the operation of a statute than to enlarge and extend the privileges thereby conferred. Its effect is "that of negativing an authority granted beyond its prescribed and clearly defined limits:" Endlich on the Interpretation of Statutes, sec. 185; Commr's v. Keith, 2 Pa. 218.

The fair construction of this proviso, therefore, is that the right of the bottler to sell is not enlarged, but that the prohibition to use his shop as a drinking place is emphasized.

This view is strengthened by the terms of the Act of June 9, 1891, P. L. 257. By sec. 2 of said act it is prohibited to any brewer or bottler "to allow any liquors sold by him, her or them to be drunk upon the premises where sold, nor any place provided by such seller for that purpose." Here, by the collocation with the word "brewer," the word "liquor" is by inevitable inference limited to brewed or malt liquors, and the purpose of the legislature to prevent bottlers' shops from becoming drinking places is made clear.

The contention that bottlers may sell ardent spirits as well as malt and brewed liquors involves another serious difficulty. As the maximum sales are not limited, a bottler may carry on a business as large as a wholesaler, may deal in the same goods

and yet pay but half the wholesaler's tax. This distinction is not satisfactorily explained by saying that the goods of the wholesaler may be contained in wood or glass while in those of the bottler the use of wood is excluded. In taxing venders the commonwealth must be presumed to regard in the main the business transacted and not slight accidental variations of packages to which no significance can be attached.

The distinction between the classes concerned becomes clear, however, when in the light of the history of the legislation we regard bottlers as a class favored by the commonwealth for the specific reason that they did not sell ardent spirits but those lighter drinks by the use of which it was hoped to reduce the evils of intemperance.

We are of opinion that McTaggart violated the law in selling whiskey under his bottler's licence. As his act was due to a misunderstanding of the law in which many shared, we are disposed to be lenient in punishing him, and the case will therefore stand over until May 31, on which day a proper order will be made.

*Error assigned* was the order of the court revoking the license.

*J. Frederick Hartman*, with him *Samuel P. Tull* and *Alexander Simpson*, for appellant.

*Thomas J. Norris*, for appellee, filed no printed brief.

OPINION BY RICE, P. J., February 25, 1907 :

Neither the act of 1887, nor the act of 1891, nor the act of 1897 defines affirmatively the privileges which a bottler's license confers. But the differentiation as to the fee between that and a wholesale license would, of itself, plainly indicate a substantial difference as to privileges, and we think a more substantial difference than that contended for by the appellant's counsel. In cities of the first and second class the fee is only one-half that for a wholesale license whilst in borough and townships it is considerably larger than the wholesale license fee. From this it might be surmised that the legislature regarded the license, from a pecuniary standpoint, less valuable

in cities of the first and second class, and more valuable in boroughs and townships, than the wholesale license. But as the legislation has regulation of the traffic, as well as revenue, for its object, it cannot be declared with certainty that this was the reason for the distinction. It is quite clear, however, that the legislature had in mind two distinct classes of business, and contemplated the granting of privileges suitable to each class. For thirty years and more prior to the high license act of 1887 " the business of bottler of cider, perry, ale, porter or beer " had been recognized in legislation relative to the sale of intoxicating beverages, and under certain restrictions could be carried on without license. The Act of May 24, 1887, P. L. 194, changed the law in this particular by declaring that "all bottlers within the commonwealth " shall be required to take out license. The act did not define the word bottler, but evidently had in view other legislation in pari materia in which " the business of bottler " was described. It had come to be a well understood term in liquor license legislation, and if the legislature in using the term in this act had intended to give it a broader signification, so as to give the person conducting the business the right to sell all kinds of intoxicating liquors, we think it would have expressed its intention in plain and unequivocal language. The legislation is quite fully reviewed in the opinion of our Brother ORLADY in Stambaugh's License, 31 Pa. Superior Ct. 243, and in the opinion filed by the learned judge below. The question as to the right of an unlicensed person to sell cider and perry, which by fermentation or otherwise has become vinous or spiritous (see Commonwealth v. Reyburg, 122 Pa. 299) does not arise in this case and need not be considered ; but we all concur in the conclusion that a bottler's license does not confer the right to sell other intoxicating beverages than those specified in the act of 1858. This conclusion is well supported by the opinion filed by the learned president judge below, and we cannot profitably add anything further to the discussion.

The order is affirmed.