| 122 | 299 |
|---|---|
| 24 SC | 1468 |
| 122 | 299 |
| 32 SC | 2566 |

# COMMONWEALTH v. CHARLES REYBURG.

ERROR TO THE COURT OF QUARTER SESSIONS OF WARREN COUNTY.

Argued May 3, 1888—Decided January 14, 1889.

1. If there is sold without a license any liquor which, though not malt or brewed, is yet either vinous or spirituous, it comes within the prohibition of the act of May 13, 1887, P. L. 108, and the question whether cider, proved to have been sold, is vinous or spirituous, is not a question of law to be decided by the court, but a question of fact to be determined by the jury.

2. If, therefore, on the trial of an indictment for the unlicensed sale of liquors under said act, there was submissible evidence that cider sold by the defendant was vinous or spirituous, it was error to charge the jury that as there was no evidence that the cider was intoxicating or had an intoxicating effect, the defendant could not be convicted.

Charge of Court below.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 228 January Term 1888, Sup. Ct.; court below, No. 28 September Term 1887, Q. S.

On September 8, 1887, an indictment, based upon a constable's return, charging that Charles Reyburg, on September 1, 1887, "did sell and offer for sale vinous, spirituous, malt and brewed liquors and various admixtures thereof, without first obtaining" a license therefor, contrary, etc., was found a true bill. The defendant, having been arrested and brought into court, pleaded not guilty, and issue was joined. There was another issue pending upon a like indictment based upon an information made by a private prosecutor.

At the trial of the indictments together on December 6, 1887, the testimony adduced showed that the defendant "was running a billiard room, and kept a kind of a lunch counter, and sold cider, ginger ale, and birch beer," in the village of Sheffield. He had sold several barrels of cider, by the glass, since April, 1887. Intoxicated persons were seen about his place, although the witnesses could not or did not state where they became intoxicated.

One witness, A. J. Delander, drank of the cider:

Q. Did it have any effect upon you? A. No; I can't exactly say that it had any effect upon me; it made me feel kind of numb like.

Another witness, Will Bloss, was asked:

Q. State what effect it had, if any, upon you? A. I could not say; I had been drinking cider at Clarendon; I could not tell whether that had the effect upon me, or whether that I got somewhere else; I felt the effect some, I think.

Q. In what way did it affect you? A. The same as any other drink, I think.

Q. Any other drink of what kind? A. Whiskey or beer; it made me feel it a little.

The other testimony was of no higher degree of force, and no evidence was offered as to the constituents of the drinks sold.

The court, BROWN, P. J., charged the jury as follows:

[There is no evidence in these cases that the article sold was

intoxicating; there is no evidence that it had that effect upon any one who partook of it, or, that it was anything other than the pure sweet juice of the apple.] [1] [And we are compelled to say that there is no evidence in the cases upon which the defendant can be convicted under the provisions of the act of 1887. Therefore we direct a verdict for the defendant.] [2]

There are two indictments before you. One is founded upon a constable's return, and, there being no prosecutor, the only disposition that can be made of it, under the instructions we have given you, would be to find the defendant not guilty, and that the county pay the costs. In the other case there was a private prosecutor, and the payment of the costs in that case, upon finding the defendant not guilty, should be determined by the jury. Under the ruling we have made, the counsel for the prosecution concede that the costs ought not to be imposed upon the defendant, and in our judgment from the evidence, we think they ought not to be imposed upon the prosecutor. This leaves but the one other source for the costs, and that is the county.

The jury returned a verdict of not guilty. Judgment having been entered, the commonwealth took this writ and assigned as error:

1, 2. The parts of the charge embraced in [ ] [1] [2]

*Mr. D. I. Ball* (with him *Mr. J. W. Dunkle, District Attorney,* and *Mr. Geo. H. Higgins*), for the plaintiff in error:

The commonwealth may have a writ of error without a special allocatur from the judges of this court. The attorney-general may sue out such writ, and the same rights are now vested in the district attorney: Commonwealth v. Capp, 48 Pa. 53; Commonwealth v. Wallace, 114 Pa. 405; Gilroy v. Commonwealth, 105 Pa. 484; Commonwealth v. Penn. R. Co., 117 Pa. 637. It may be that the case belongs to a different class of misdemeanors. If so, we urge that the act of May 24, 1887, P. L. 199, relating to stenographers, puts the record in this case in shape for review. Whatever appears upon the record may be assigned for error: Chase v. Vandergrift, 88 Pa. 217; Bonesteel v. Sullivan, 104 Pa. 12; Wheeler v. Winn, 53 Pa. 122; Hopkins v. Commonwealth, 50 Pa. 11.

1. By reference to § 18, act of March 11, 1834, P. L. 117; § 1, act of February 26, 1855, P. L. 53; § 32, act of March 31, 1856, P. L. 200; § 8, act of April 20, 1858, P. L. 365; §§ 1 and 5, act of April 12, 1875, P. L. 48, it will be seen that the whole course of legislation upon the subject of intoxicating liquors, since 1834, has been directed against cider as well as other liquors.  There has been no act passed since then, evincing a change of purpose in the legislative mind regarding it. Nor is the legislative prohibition of the sale of cider of recent outgrowth, as is shown by § 2, act of August 26, 1721, 1 Sm. L. 127.

2. Experience in enforcing these classes of laws shows the necessity of using general terms in legislating thereon, so that it shall be unnecessary to allege in the indictment and prove upon trial the sale of any particular kind of liquor.  If a sale be proven of a kind of liquor embraced within either of the general classifications contained in the act, that is a violation of the law.  If the act in terms prohibited the sale, for instance, of whiskey, gin, ale, beer, wine or cider, it would be necessary to charge and prove the sale of the particular kind of liquor. But under such a law as that of May 13, 1887, P. L. 108, under which this prosecution was had, prohibiting in general terms the sale without a license of vinous, spirituous, malt or brewed liquors, an indictment such as the present would undoubtedly be sustained by proof of sale of either whiskey, brandy, gin, ale, beer or wine : State v. Manufacturing Co., 9 Cent. R. 496.  It is therefore the duty of the court to say whether a particular liquor of well known use and character, as for instance, whiskey or beer, is within or without the statute : Intoxicating Liquor Cases, 25 Kan. 751 (37 Amer. R. 284, 292).

3. Cider, as included in the act of 1887, is embraced in that class of liquors designated as vinous liquors.  The term liquor, is defined as any liquid or fluid substance ; especially alcoholic or spirituous fluid, either distilled or fermented: Webster. The term vinous liquors, is used to cover that large class of intoxicating liquors which are not the product of the distillery or brewery.  In case of proof of a sale of whiskey, is it necessary to prove its intoxicating character?  Why not, if it is necessary to prove the intoxicating character of cider?  And

why not as necessary to prove the intoxicating character of beer or wine? If the amount of alcohol in the liquor, or the intoxicating character thereof is the test, then most cider contains more alcohol than most beers, and but little less than some wines, as shown by standard works upon the subject.

Mr. *George N. Frazine* (with him Mr. *James W. Wiggins*), for the defendant in error:

Is cider a vinous liquor, the unlicensed sale of which is within the prohibition of the act of May 13, 1887, P. L. 108?

1. The acts of assembly relative to the sale of intoxicating liquors enacted prior to May 13, 1887, are of no value in determining the question. In the construction of a penal statute, words of doubtful import should be construed, not in a comprehensive, but in a restricted sense; a popular and common sense, not a scientific, technical or peculiar sense. To adopt any other rule, would be to violate the principle that a penal statute must be construed strictly. We do not deny that, in a technical and comprehensive sense, cider is a vinous liquor, because vinous fermentation begins the instant the juice is expressed from the apple. But in its popular sense, the term vinous, does not describe the liquor, cider.

2. The best method of construction of a contract is that which is made by viewing the subject of the contract as the mass of mankind would view it; for, it may safely be assumed that such was the aspect in which the parties viewed it: Dunham v. Kirkpatrick, 101 Pa. 36; Schuylkill Nav. Co. v. Moore, 2 Wh. 477; Gibson v. Tyson, 5 W. 34; Robertson v. French, 4 East 135; 1 Bl. Com. 59*.

To the mass of mankind the phrase, vinous liquor, means the juice of the grape. The legislature used the words, vinous liquor, not as scientists, but as business men, using the language and governed by the ideas of every day life.

OPINION, MR. JUSTICE GREEN:

The only question in this case is whether cider is a " vinous " or "spirituous " liquor. It certainly is not " malt " or "brewed," and as the act of 1887 under which the indictment in this case is framed, defines only these four kinds of liquor as those which require a license to validate their sale, the only inquiry

arising is whether cider, which the defendant did sell, is a vinous or spirituous liquor.

The learned court below charged the jury that there was no evidence that it was intoxicating, or that it had an intoxicating effect, and therefore the defendant could not be convicted. Without stopping to refine upon the meaning of the word "intoxicating," or the degree of alcoholic admixture which is necessary to render any liquid intoxicating, it is only necessary to say that the intoxicating quality is not the one which is prohibited by the act, and hence an issue upon that question does not arise under the indictment. If however any liquor which is sold without license, is either vinous or spirituous, it comes within the prohibition of the act. But the question whether cider is vinous or spirituous is not a question of law to be decided by the court, but a question of fact to be determined by the jury. Of course if there is no evidence on the trial that a liquor is either vinous or spirituous, malt or brewed, it would be the duty of the court to say so to the jury and direct an acquittal for that reason. But if there is evidence on that subject, more than a scintilla, it is for the jury and not for the court to decide upon it.

Cider is defined by Worcester to be "a fermented liquor made from the juice of apples; formerly used for all kinds of strong liquors except wine." And by Webster, "A drink made from the juice of apples. Note. The word was formerly used to signify the juice of other fruits and other kinds of strong liquor except wine, but it is now appropriated to the juice of apples before and after fermentation." Certainly in common acceptation cider is not understood to be either a vinous or a spirituous beverage, yet when fermented it doubtless contains a percentage of alcohol sufficient to bring it within the fair meaning of the term "vinous;" and, although not the product of distillation, it may, when mixed with spirituous liquor and sold in that condition under the name of cider, be regarded as "spirituous" within the meaning of the prohibition.

The evidence on the trial was very weak indeed. No skilled person having knowledge of the chemical composition of cider was examined, and there was no direct evidence as to whether the liquor sold as cider was vinous or spirituous.

There was not even any direct evidence whether the cider sold by the defendant was fermented, but there was some testimony that persons using it felt the effects of it the same as if they had been drinking whiskey or beer. We think there was evidence sufficient to carry to the jury the question whether the cider sold by the defendant was a vinous or spirituous liquor. We attach no importance to the argument adduced from a consideration of other acts of assembly. This is a criminal statute and must be strictly construed. If the article sold was a vinous or spirituous liquor the defendant was guilty; if not, he was innocent and should be acquitted: but whether it was or not, was a question for the jury and not for the court. We do not mean to intimate that the mere unfermented juice of the apple is in any circumstances to be regarded as either a vinous or spirituous liquor, but we do not know and cannot say, as matter of law, that its character may not be so changed by fermentation as to bring it within the meaning of the term " vinous." Of course an admixture with spirits might render the compound " spirituous."

Judgment reversed and new venire awarded.