# Commonwealth *v.* Vigliotti, Appellant (No. 1).

*Constitutional law—Eighteenth amendment—Concurring powers of State and national governments—Volstead Act—Effect on State license laws.*

Prior to the adoption of the 18th amendment to the Constitution of the United States the regulation or prohibition of the sale of alcoholic liquors, except as affected by the interstate commerce laws, was within the power of the State. The authority conferred on Congress by the 18th amendment is not exclusive, but by express language of the amendment like authority of enforcement resides in the several states. Such authority must not be exercised in antagonism to the legislation of Congress on the subject. It is a lawful power effective to enforce state legislation, having for its object the suppression of the traffic in spirituous, vinous and malt liquors and admixtures thereof.

It should never be held that Congress intended to supersede or by legislation suspend the exercise of the police powers of the states, even when it may do so, unless its purpose to effect that result is clearly manifest. The Act of May 13, 1887, P. L. 108 (Brooks License Law), is a restrictive or prohibitory law, defining who may sell alcoholic liquors, and prohibits sales except by persons holding licenses therefor. The passage of the 18th amendment and the enactment of the Volstead Act are not inconsistent with the Act of May 13, 1887, P. L. 108.

The state statute is not directed against the manufacture and transportation of liquors, while the 18th amendment and the prohibitory law passed pursuant thereto apply to both of these. While the amendment to the Constitution renders invalid a part of the Pennsylvania statute, it is in entire harmony with another part thereof. The part which is not in conflict with the federal law is self-sustaining and capable of enforcement and is still in force.

Nothing in the amendment or the act of Congress passed for its enforcement renders it necessary to hold that the "appropriate legislation," mentioned in the 2d section of the amendment, must be enacted after its adoption. Existing laws may be as appropriate as those subsequently passed to accomplish the object. It would be a vain thing to require the states in which the prohibition of the sale of liquor was in force at the time of the adoption of the amendment to reënact their laws on the subject, and if the prohibitive provisions of the statute of Pennsylvania are sufficient in terms for that purpose, there is no convincing reason why they

366, (1921).] Syllabus—Assignment of Errors.

should not be held to be appropriate for the purpose contemplated.

*Charge of court—Instructions as to law—Province of jury.*

In a prosecution for selling liquor without a license where the defense advanced is that the amendment to the Constitution in effect repealed the state license law, a charge of the court that the "best evidence the jurors have of the law is the instructions of the court," and that it is the duty of the latter to point it out to them and for them to accept it, is without error.

*Criminal law—Selling liquor without a license—Evidence.*

In a prosecution for selling liquor without a license it was proper to admit evidence of sales, and that large quantities of the article were found on the premises of the defendants. Such evidence bore on the kind of business conducted by them with respect to the charge in the indictment and on the question of intent and guilty knowledge.

Argued October 11, 1920. Appeal, No. 76, April T., 1921, by defendant, from sentence of Q. S. Fayette County, June Sessions, 1920, No. 80, on verdict of guilty in the case of Commonwealth of Pennsylvania v. Tony Vigliotti. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Affirmed.

Indictment for selling liquor without a license. Before REPPERT, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence and refusal of defendant's motion in arrest of judgment on the ground that the Act of May 13, 1887, P. L. 113, is superseded and repealed by the 18th Amendment to the Constitution of the United States and the Act of Congress known as the Volstead Act.

*E. C. Higbee,* for appellant.—The Brooks Law is superseded by the 18th Amendment to the Constitution of

the United States: Raudenbusch's Petition, 120 Pa. 328; Venango County Liquor License, 58 Pa. Superior Ct. 277; Virginia Dare Wine, 29 D. R. 116; Montour County, Licenses, 29 D. R. 181; Columbia County License Cases, 29 D. R. 181; Winter's Petition, 29 D. R. 184; Susquehanna County Licenses, 29 D. R. 340; Applications for Liquor License, 29 D. R. 223; Reinhart's Petition, 48 C. C. 422; the Brandon License, 29 D. R. 248; Clearfield County License, 29 D. R. 339; Com. v. Joe Hido, 1 Somerset Legal Journal 3; Com. v. Olivadotti, 36 Montgomery County Law Reporter 209.

*William A. Miller,* District Attorney, for appellee.— The Brooks Law has not been superseded by the 18th Amendment to the Constitution of the United States and is still in force in Pennsylvania: Ruppert v. Caffey, 151 U. S. 264; Ex parte Guerra, 110 Atl. (Vt.) 224; Brown v. Commissioners, 28 Pa. 42; Hendrick's Account, 146 Pa. 285; Com. v. Pottsville, 246 Pa. 468; Vol. 91 Central Law Journal, 205; Lackawanna County Licenses, 48 Pa. C. C. Repts. 494.

OPINION BY HENDERSON, J., March 5, 1921:

The appellant was convicted of selling liquor without a license. The indictment was drawn under the Act of May 13, 1887, P. L. 108. That statute is entitled "An Act to regulate and restrain the sale of vinous, spirituous, malt or brewed liquors or any admixtures thereof." Provision is made therein for the granting, by the several courts of quarter sessions, of licenses to sell liquor on compliance with conditions in the act prescribed and subject to the judgment of the court under the evidence as to the fitness of the person or place and the necessity for such license. It is provided in the 16th section that "Any person who shall thereafter be convicted of selling or offering for sale any vinous, spirituous, malt or brewed liquors or any admixtures thereof without a license, shall be sentenced to pay a

fine of not less than Five Hundred Dollars nor more
than Five Thousand and undergo an imprisonment in
the county jail for not less than three months nor more
than twelve months." The evidence of the Common-
wealth showed that the defendant made sales, in the
spring of 1920, of a preparation called "Jamaica Ginger"
which contained eighty-eight per cent of alcohol. No
evidence was offered by the defendant. It was contend-
ed in his behalf, however, at the trial, that the act under
which the indictment was drawn was superseded and re-
pealed by the 18th amendment of the Constitution of the
United States, and the Act of Congress of October 28,
1919, passed pursuant thereto, prohibiting the manufac-
ture, sale, or transportation of intoxicating liquors as a
beverage, within the United States, as a result whereof
the Commonwealth is disabled from the enforcement of
its statute; and the same question is presented in this
appeal. We are to consider therefore the effect of the
federal amendment and the act of Congress to enforce
prohibition on the legislation of this State regulating
the traffic in liquors. It is not to be questioned that
prior to the federal amendment the regulation or prohi-
bition of the sale of liquors except as affected by the
interstate commerce laws was within the police power of
the state; a power not conferred on the United States
except as incidental to some other power conferred on
it by the Constitution: Hamilton v. Kentucky Distilling
Companies, 251 U. S. 146; Mughler v. Kansas, 123 U. S.
623. Has this power been taken away by the amend-
ment or merely limited in the scope of its operation?
If wholly superseded and annulled that result must be
found in the language of the amendment or in the neces-
sary implication arising therefrom. That the first sec-
tion declaring prohibition is obligatory throughout the
United States and therefore renders inoperative every
legislative act permitting what the section prohibits may
be seen by an inspection of its terms, and this construc-
tion was given it in Rhode Island v. Palmer, 253 U. S. 350.

In the second section of the amendment it is declared: "The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation." Of the words "concurrent power" it was said in the same opinion that they do not mean joint power or require that legislation thereon to be effective shall be approved or sanctioned by the several states or any of them; nor do they mean that the power to enforce is divided between Congress and the several states along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs. In the ninth conclusion of the opinion referred to the court said: "That power confided to Congress by that section while not exclusive, is territorially coextensive with the prohibition of the first section; embraces manufacture and other intrastate transactions as well as importation, exportation and other interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several states or any of them." When regard is had to the object of the amendment and the reasonable means to be adopted for its enforcement, the argument seems convincing that the purpose in the use of the words "concurrent power to enforce" was to continue in the several states the authority theretofore existing under the police power to establish prohibition, and to confer on the federal government a like power which had not theretofore existed. Congress and the legislatures of the states are placed on the same footing. The word concurrent is used in the sense of existing together—concomitant, operating at the same time along parallel lines toward the accomplishment of the same purpose. If it had been the intention of the people in amending their Constitution to assume exclusive control of the subject, this would have been done by appropriate words or by conferring on Congress exclusive authority to legislate on the subject. By reference to the thirteenth, fourteenth and fifteenth amendments, it will be observed that authority to enforce the provisions

thereof is given to Congress alone.   The presumption is warranted that the grant of authority in the eighteenth amendment was intended to be different, and that express authority to the states was declared to avoid the controversy so often arising with respect to conflict of authority between the federal and state governments. The purpose was to abolish the use of intoxicating liquor as a beverage and it doubtless occurred to the minds of the framers of the amendment that this could be more expeditiously, economically and successfully accomplished if the federal government and the states coöperate to that end.   There is thus left to the states the same police power with respect to liquors which theretofore existed,  subject however to the prohibitions of the amendment.   We are constrained to hold therefore that the authority conferred on Congress by the eighteenth amendment is not exclusive and that by the express language of the amendment like authority of enforcement resides in the several states.   Such authority must not be exercised in antagonism to the legislation of the Congress on the subject, but within the limitations indicated it is a lawful power effective to enforce state legislation having for its object the suppression of the traffic in spirituous, vinous and malt liquors or admixtures thereof.

If the "concurrent power" referred to is something less than or different from, the giving of like power to the federal government and the several states to act with respect to the prohibition thereby established, it does not necessarily follow that the state is disabled from legislating against the manufacture, sale and transportation of liquors.   The authority of the states to legislate on subjects with respect to which Congress has power, has been recognized in many cases.   It was held in Gilman v. Phila., 3 Wallace 713: "The states may exercise concurrent or independent power in all cases but three: (1) Where the power is lodged exclusively in the federal constitution; (2) Where it is given to

the United States and prohibited to the states; (3) Where from the nature and subjects of the power it must necessarily be exercised by the national government"; and as applied to the police power the court said in Reid v. Colorado, 187 U. S. 137: "It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the states, even when it may do so, unless its purpose to effect that result is clearly manifest. This court has said—and the principle has been often reaffirmed—that in the application of this principle of the supremacy of an act of Congress in a case where the state law is but the exercise of a reserved power, the repugnance or conflict should be direct and positive so that the two could not be reconciled or consistently stand together." This case involved the validity of a state law providing for the inspection of live stock coming into the state from other states. It affected interstate commerce therefore and applied to live stock which had been inspected in accordance with an act of Congress. The authority of the state to enact and enforce the statute was upheld. The subject is considered at length in Fox v. Ohio, 5 Howard 410. Sinnot v. Davenport, 22 Howard 227; Ex parte Siebold, 100 U. S. 371; Southern Railway v. Indiana, 236 U. S. 439, and Sexton v. California, 189 U. S. 319, are authorities bearing on the same subject. In the light of the principle declared in the cases cited, it may be confidently held that in the absence of an express grant of concurrent authority to the state, it was not restrained by the amendment from the exercise of the police power not necessarily inconsistent therewith.

The concurrent power conferred by the second section of the amendment is to enforce the article by "appropriate legislation." The defendant having been indicted under a statute existing prior to the adoption of the amendment it becomes necessary to ascertain to what extent this legislation is affected by the amendment and to inquire whether any part of it is in force and "ap-

propriate" within the meaning of the Constitution. There can be no doubt of the capacity of the legislature to enact the law on which the indictment rests. There was adequate warrant in the police power for all that was then enacted. The title of the statute is "to restrain and regulate" the sale of vinous, spirituous, malt or brewed liquors or any admixtures thereof. In the first section it is declared to be unlawful to keep or maintain any house, room or place, hotel, inn, or tavern where any vinous, spirituous, malt or brewed liquors or any admixtures thereof are sold by retail except a license therefor shall have been previously obtained as hereinafter provided. Subsequent sections prescribe the conditions under which licenses to sell liquors at retail may be granted by the courts of quarter sessions of the respective counties. The fifteenth section declares that any person who shall be convicted of selling or offering for sale any vinous, spirituous, malt or brewed liquors or any admixtures thereof without a license shall be sentenced to pay a fine of not less than five hundred dollars nor more than five thousand and undergo an imprisonment in the county jail of not less than three months nor more than twelve months. It is declared unlawful in the seventeenth section for any person with or without license to furnish by sale, gift or otherwise to any person any spirituous, vinous, malt or brewed liquors on any day that elections may now or hereafter be required to be held, nor on Sundays, nor at any time to a minor or a person of known intemperate habits, or a person visibly affected by intoxicating drink, either for his or her use or for the use of any other person, nor to sell or furnish liquors to any person on a pass book or order on a store, or to receive from any person, goods, wares, merchandise or provisions in exchange for liquors, and penalties are provided for such prohibited acts. It is evident that the prohibition of the sale of liquor is one of the important objects of this legislation. Restraint of the business was one of the purposes declared in the

title, and the numerous prohibitive provisions and the restrictions with respect to the granting of licenses show that it was the intention to exclude the many from participation in the business and grant to the few the privilege of selling under restricted and supervised conditions. All of the citizens of the Commonwealth, except the small number who might receive licenses, are forbidden to sell. The right to sell was the exception, and in the case of an indictment for selling without license, the burden is on the defendant to show the authority under which he acted: Com. v. Wenzel, 24 Pa. Superior Ct. 467. It should also be observed that the statute provides that "it shall not be held to authorize the sale of liquors in any city, county, borough or township having special prohibitory laws." It was a statute of restraint not of enlargement of the right to sell liquors and is the last of a succession of enactments on that subject covering the whole history of the Commonwealth and indicating a steady advance toward the suppression of the business. It was not necessary under the act that all licenses be granted. On the contrary it was within the discretion of the courts to refuse all when in the opinion of the court such licenses were not necessary "for the accommodation of the public and entertainment of strangers or travellers." In an important sense therefore it is a prohibitory law. It is contended, however, that the provision for the granting of licenses is inseparably connected with the other provisions of the act and that the legislature would not have enacted the law without its license provisions. It may be conceded that the legislature intended that some licenses should be granted, at least the authority to so act was vested in the discretion of the courts of quarter session, but the legislative intent is not a determining fact in the consideration of the question before us. That question is: Did the adoption of the amendment to the Constitution abrogate all the law of the state relating to the vending of liquors? Here is a statute the integrity and vitality of which could not

have been questioned prior to the change in the federal Constitution. It had two purposes, to permit the granting of licenses to sell to some persons, and to forbid all other persons from dealing in the merchandise described. It is obvious that the amendment supersedes as much of the law of the State as permits the granting of licenses to sell intoxicating liquors for beverage purposes. What constitutes intoxicating liquors is not defined in the amendment, but pursuant to the authority conferred on it, the Congress has declared what shall be embraced within that category by the adoption of the Act of October 28, 1919, commonly called the Volstead Act. Under this legislation, beverages containing one-half of one per cent of alcohol are intoxicating liquors. It will be noticed that the prohibition in the statute of the State is not against "intoxicating liquors" to be used for "beverage purposes" as in the federal amendment, but against the sale or offering for sale of any vinous, spirituous, malt or brewed liquors or admixtures thereof. The federal legislation does not go to the same extent as that of the State, with reference to the subjects of prohibition. Under the former, intoxicating liquors for beverage purposes having an alcoholic content of one-half of one per cent or more are the subjects of prohibition. While in this State prohibition as has been seen is against vinous, spirituous, malt or brewed liquors or admixtures thereof without reference to the quantity of alcohol contained therein and irrespective of the question whether they are to be used as a beverage. It is not important in this State whether the thing sold or offered for sale is intoxicating or not so long as it comes within any of the classes named in the statute: Hatfield v. Com., 120 Pa. 395; Com. v. Reyburg, 122 Pa. 299; Com. v. Burns, 38 Pa. Superior Ct. 514; Ruppert v. Caffey, 251 U. S. 264. The state statute is not directed against the manufacture and transportation of liquors, while the eighteenth amendment and the prohibitory law passed pursuant thereto apply to both of these. It will be seen that none

of the prohibitions of the act of Congress are in conflict with the prohibitory provisions of the act of the legislature of 1887.   We have then a situation in which the amendment of the Constitution renders invalid a part of the statute of this State, but is in entire harmony with another part thereof.   Is the part which is not in conflict with the federal law self-sustaining and capable of enforcement?   In our opinion so much of the act of this State as prohibits the sale of liquor is still in force.   It cannot be questioned that the legislature might have repealed the provisions of the Act of 1887 authorizing the granting of licenses leaving in force the prohibitory provisions thereof, and if this might have been done, why is not the same result accomplished by the paramount authority of the amended Constitution?   The effect of that instrument is to invalidate all State laws inconsistent therewith, but it does not operate on any legislation compatible therewith.   We regard the Act of 1887 as legislation on two subjects clearly distinguishable—the granting of licenses to sell, and prohibition of sale by persons not licensed.   If the authority to license is removed, we see no necessity for holding that permission to sell without license is affected.   This we think is contrary to the express terms of the second section of the amendment and to the implied power existing in the State irrespective of such express permission, and having in view the terms and objects of the State statute, it seems evident that its provisions with respect to licenses are not so dependent on and interlocked with its prohibitory provisions that the authority to grant licenses can not be abrogated without at the same time overthrowing its prohibitory features.   Is the Act of 1887 "appropriate legislation" within the meaning of the second section of the amendment?   Nothing in the amendment or the act of Congress passed for its enforcement requires us to hold that appropriate legislation must be a statute enacted after the adoption of the constitutional amendment.   Existing laws may be as

appropriate as those subsequently passed to accomplish the objects. It would be a vain thing to require the states in which the prohibition of the sale of liquor was in force at the time of the adoption of the amendment to reënact their laws on the subject, and if the prohibitive provisions of the statute of this State are sufficient in terms for that purpose, we are unable to find a convincing reason why they should not be held to be appropriate for the purposes contemplated: In re Van Vliet, 43 Fed. Rep. 761; Com. v. Nickerson, 128 N. E. 273. The act of Congress is a remedial enactment and should be liberally construed and the advancement of the remedy should be promoted by any construction which can consistently be put on it. To hold otherwise would give a narrow interpretation, the effect of which would be to greatly restrict the means by which the objects of the amendment are to be accomplished. It is not necessary that such legislation be identical in terms with that adopted by the United States. If the object is the same, if its enforcement tends to accomplish that which the federal legislation undertakes to do and is in no way inconsistent with or contradictory of the federal law, it is appropriate and may be enforced. Our conclusions are, therefore: (1) That by operation of the eighteenth amendment of the federal Constitution and the enactment of the federal prohibitory law by Congress, so much of the Act of May 13, 1887, of this State as authorizes the sale of intoxicating liquor, containing one-half of one per cent or more of alcohol, as a beverage, is rendered invalid; (2) That the part of the Act of May 13, 1887, which prohibits the sale of the liquors described in the eighteenth amendment and the legislation of Congress in enforcement thereof is in force and unaffected by the amendment; (3) That the part of the Act of May 13, 1887, which is not invalidated by the eighteenth amendment and the national prohibition law is effective existing legislation; (4) That it

is appropriate legislation under the second section of the eighteenth amendment.

When the defendants were arrested the officer who had the warrant took from the premises of the accused a considerable quantity of liquor which was offered in evidence at the trial. This was objected to on the ground that the possession of the exhibit was obtained in violation of the fourth amendment of the Constitution of the United States and the eighth section of the Bill of Rights of Pennsylvania which prohibit unreasonable searches and seizures, and the appellant complains that this objection was overruled. The reason assigned was not sufficient to justify the court in excluding the offer. Conceding that the packages were taken from the store and residence of the defendants without authority, the admissibility of the evidence is not affected by the illegality of the means through which it was obtained. The court will not suspend the conduct of a trial to enter into a collateral inquiry as to the means through which the evidence, otherwise competent, was obtained. If a wrong was done the owner, his remedy is in a different forum: Adams v. New York, 192 U. S. 594; Com. v. Dana, 2 Metcalf 329; Cluet v. Rosenthal, 100 Mich. 193; 1 Greenleaf's Evidence, section 254; 3 Wigmore on Evidence, section 2183.

Exception is taken to the answer of the court to the defendants' sixth point as set forth in the twenty-fourth assignment of error. The point was "in this case the jury are the judges of the law and the facts." The court's answer was: "Counsel have asked for a categorical answer to this point. In our judgment the defendants are not entitled to an affirmation of the request without explanation or qualification. The best evidence the jurors have of the law is the instructions of the court. It is our duty to declare the law to them and it is their duty to accept it when so declared. The point is therefore refused." Taking the whole of the answer into consideration it is evident that the concluding sentence

related to what the court referred to as a request for a
"categorical answer" to the point and was not intended
as an instruction to the jury that they were not author-
ized to dispose of the case on the law and the evidence.
The caution of the court probably arose out of the legal
difficulties in the case from the nature of the de-
fense presented by the learned counsel for the appellant.
The principal question discussed before the court, and in
the brief and oral argument on the appeal, was that re-
lating to the effect of the adoption of the eighteenth
amendment to the Constitution on the law of Pennsyl-
vania regulating the sale of liquor. That was a subject
with which the jury was doubtless not familiar. It
was new to the courts and bar of this State. When
the court said the defendants were not entitled to
the affirmation of their point without explanation or
qualification he was in harmony with the decisions in
Com. v. McMannus, 143 Pa. 64; Com. v. Bednorciki, 264
Pa. 124. In the latter case the court charged: "You
are the judges of the facts as I have tried to explain to
you and it is my duty to declare to you the law." In
sustaining this part of the charge Justice WALLING
said: "The latter clause is criticised, but unjustly so.
It is the duty of the trial judge to declare the law to
the jury in every criminal case and particularly in a
homicide case: Meyers v. Com., 83 Pa. 131, and Com.
v. Smith, 221 Pa. 552. The best evidence the jurors have
of the law is the instructions of the court. Of course
they can render a general verdict of not guilty and to
that extent are ultimately the judges of both the law and
the facts; but that does not absolve the court from do-
ing its duty of declaring the law to them nor absolve
them from the duty of accepting it when so declared."
The answer of the trial judge is a qualification of the
point and did not mislead the jury, for the question of
the guilt or innocence of the defendants was submitted
to the jury in a manner not objected to. In Com. v. Mc-
Mannus a similar point was answered substantially in

the same way.  The jury was instructed that the statement of the law by the court was the best evidence of the law within the jury's reach, and that the jury was to be guided by what the court had stated with reference to the law, and this was said to be an accurate and carefully considered answer to the point.

In the ninth assignment error is alleged in the admission of evidence of more than one particular act of selling under each count in the indictment.  This objection is not sustained.  The practice is well established to permit the introduction of evidence of other acts than those charged in the indictment when such acts are of like character and were reasonably close as to time with the act charged in the indictment.  Where the offense is a carrying on of business forbidden by law, or where a license is required by statute, and the defendant is tried for a violation thereof, it is admissible to prove the method of doing business to show the motive, purpose and guilty knowledge of the defendant: Com. v. McDermott, 37 Pa. Superior Ct. 1, and authorities there cited.

The offer of evidence covered by the twelfth and thirteenth assignments was competent.  It was of like character with other evidence introduced in the case.  The question of the identification of the package was one relating to the weight of the evidence, but not affecting its competency.  Moreover it was of slight consequence.  Evidence of sales was clear and conclusive.  No testimony was offered by the defendants and the admission or exclusion of this evidence would have produced no change in the verdict.  The evidence of the intoxicating effect of the thing sold was admissible: Com. v. Reyburg, 122 Pa. 305; 1 Wigmore on Evidence, page 554.  The admission as evidence of large quantities of like character as the article sold found on the premises of the defendants was proper.  It bore on the kind of business conducted by the defendants with respect to the charge in the indictment and on the question of intent and guilty knowledge.  The jury might have believed the

quantity found to be out of all proportion to the demands of a legitimate trade in Jamaica Ginger, and in connection with other evidence in the case as to quantities sold to particular individuals and alcoholic content it supported the Commonwealth's contention that the defendants were engaged as a business in the unlawful sale of spirituous liquors: Com. v. Johnston, 5 Pa. Superior Ct. 585.

We do not find support for any of the assignments of error. They are therefore overruled and the judgment is affirmed and the record remitted to the court below. And it is ordered that the defendant appear in that court at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.