## Commonwealth v. Unger, President of Lion Brewery.

*Criminal law—Pleading—Non vult.*

1. The plea of *non vult* is a sensible method of obtaining legal advice from the court in advance of the trial.

*Liquor law—Seizure of beer truck without warrant—Evidence.*

2. A truck loaded with beer cannot be seized in the absence of a proper warrant or of reasonable ground for sensible suspicion that the beer was in excess of the legal alcoholic contents.

3. The admissibility of evidence is not affected by the illegality of the means through which it was obtained.

4. If evidence of violation of the liquor law is obtained by an illegal seizure of liquor, defendant cannot at the trial avail himself of such illegality as a defence, if it appears that he did not demand a return of the liquor until months after its seizure.

5. Where a brewing company manufactures beer containing an excess of the legal alcoholic contents, the president and manager of the company may be indicted for violation of the liquor laws.

Plea of *non vult contendere* on indictment for manufacture of intoxicating beverage. Q. S. Luzerne Co., April Sess., 1923, No. 58.

*A. H. James*, District Attorney, for Commonwealth.

*Frank P. Slattery*, for defendant.

FULLER, P. J., May 3, 1923.—This case comes to us on defendant's plea of *non vult contendere*, which we have heretofore denominated an exculpatory form of inculpation, to determine the sufficiency of the Commonwealth's evidence, being accompanied by the reservation that if the court deems the evidence sufficient in law to sustain conviction, the plea may be withdrawn and the defendant stand trial, and if insufficient, sentence would be suspended.

This reservation may strike the careless mind as the equivalent of "heads I win, tails you lose," but it really is a sensible method of obtaining legal advice from the court in advance.

The sole evidence in the case consisted of (1) seizure and search, without warrant, by State police of the Lion Brewing Company's truck as it emerged from the brewery, driven by the brewery employee and loaded with the brewery's beer of 4.42 percentage, perfectly harmless and very attractive,

4 D. & C.

but prohibited; (2) defendant shown to be the president and manager of the brewing company, in control of the establishment, but not shown to have had any actual personal connection with sending out this particular load of beer or with knowledge of its unlawful character.

At the hearing, defendant, as a precautionary measure, made application to the court for a rule on the police to return the captured beverage.

The questions presented for our consideration are (1) whether seizure and search of a brewery truck and confiscation thereof without warrant, and without the slightest circumstance disclosed in the evidence enabling the nose, eye, ear or taste of the officer to discover or suspect the contraband nature of the contents, or establish probable ground of discovery or suspicion, was unlawful as an invasion of constitutional security against such seizure and search; (2) whether, if it was unlawful, the evidence is thereby rendered *ipso facto* incompetent; (3) whether, if the evidence is not thereby rendered *ipso facto* incompetent, the position of the defendant on that point is improved by his application for rule on the police to return the contraband beer; (4) whether, if the position of the defendant on that point cannot be improved, leaving in the case the established fact of contraband nature, the defendant's individual guilt is established by the mere additional fact of his being the president and manager of the brewing company in control.

We will opine, but not decide these questions, as we deem them too important to be definitely decided by a single judge in this form of submission on plea of *non vult*, accompanied by reservation.

1. We opine that the seizure and search was unlawful. No State law, at the time of the alleged offence, authorized, or pretended to authorize, such a proceeding. Even the Federal Volstead Act and its late-born progeny, the State Enforcement Act, base seizure of vehicle without a warrant, upon discovery, and discovery, according to reasonable authority, depends upon incriminating information to the sense of the seizing officer, making probable the conclusion of contraband contents. Such discovery must precede seizure in order to justify the latter.

A loaded brewery truck is not, *per se*, an outlaw to be nabbed on sight. The conduct of a brewery is a legitimate private business, and its truck used in the transportation of its product is a legitimate private vehicle, entitled to the same immunity from official attack as any other private vehicle assuredly is entitled, in the absence of a proper warrant or of reasonable ground for sensible suspicion.

In the present case, according to the evidence, there was neither warrant nor ground for suspicion. In broad daylight, a legitimate vehicle emerged in a legitimate way from a legitimate establishment, on a legitimate errand, so far as it was possible to discover without actual seizure and search.

If this seizure can be justified in law, any private individual emerging from his private property in his private automobile, with his private family or friends, on a private trip of pleasure, is lawful game to be bagged like a bandit at the arbitrary pleasure of any officer. Such a thing does not seem possible even in this age of accomplished impossibilities, and the dangerous injustice of the proceeding is fully demonstrated by the circumstance that in the contemporaneous seizure of sundry other brewery trucks in a concerted raid upon as many other breweries under like circumstances, all were found innocent and not one was found to carry contraband. No felony had been committed, nor did any emergency exist demanding quick action. A proper warrant to search the premises would have been easily effective within the law.

Prohibition, however valuable it may be as a policy of state, would be dearly bought at the price of losing the Bill of Rights.

2. But assuming the unlawfulness by which the evidence in this case was procured, is the evidence thereby rendered *ipso facto* incompetent?

The contrary seems to be expressly decided, in line with authority, by Com. v. Vigliotti, 75 Pa. Superior Ct. 366, later affirmed without discussion of this point by our Supreme Court, 271 Pa. 10, then by the Supreme Court of the United States in Advance Opinions, 1921-1922, page 389, and still later recognized by the Superior Court, March 2, 1923, in Com. v. Crasse, distinguishing 252 U. S. 298, cited *contra;* the principle being thus stated in Com. v. Vigliotti, viz.: "The admissibility of the evidence is not affected by the illegality of the means through which it was obtained. The court will not suspend the conduct of a trial to enter into a collateral inquiry as to the means through which the evidence, otherwise competent, was obtained."

3. Well, then, can the position of defendant on the point of incompetency be improved by the application for rule to return the contraband beer which constitutes the evidence?

The seizure was made on Jan. 27, 1923, and the application for return was not made until the case was called for trial at the time of entering plea. We fail to see how this can obviate the principle stated in Com. v. Vigliotti, 75 Pa. Superior Ct. 366; and in Com. v. Eitler, 2 D. & C. 33, Judge Hargest found like difficulty, saying: "The defendant in the case before us knew in advance of the trial of the seizure which he claims was illegal, but made no move to protect his constitutional right by an application for the return of the property. . . . We, therefore, conclude that the seizure of this liquor was illegal, and if application had been made, the property would have probably been returned to the defendant, but, inasmuch as no objection to the possession of the property by the prosecuting officials was made until the trial, it was not error, under all the circumstances, to admit the evidence."

Furthermore, we fail to understand how the defendant can possibly be benefited by return of the beer at this time, months after the incriminating analysis, which, we take it, would be competent and sufficient evidence without presence of the beer in court.

4. Finally, we reach the question whether, assuming the competency of the evidence, the defendant's individual guilt is established by the fact of his being president and manager of the brewing company, in control.

To this we have little difficulty in finding an affirmative answer. The corporation itself might unquestionably be indicted and convicted on the evidence furnished by seizure and analysis of its product coming direct from the corporate place of manufacture in a corporate vehicle driven by a corporate employee, fortified by the reasonable inferences deducible by a jury therefrom. The responsibiltiy of a corporation, however, is a purely secondary legal deduction from the acts of individuals who manage its business and are the proximate, primary and immediate perpetrators of the offence. Defendant, being president and manager in control, is one of those unfortunate individuals who cannot find shelter behind the legal figment of incorporation.

Having thus in an advisory capacity answered the controlling questions of this case in a manner which affirms the sufficiency of the Commonwealth's evidence to convict on trial by jury, we must in good faith to the reservation accompanying the plea permit withdrawal of same and direct that the case be set down for trial in due course.

NOTE.—See Com. v. Street, 3 D. & C. 783.