# Com. ex rel. Kohler v. Turnkey of Central Police Station.

*Constitutional law—Searches and seizures—Intoxicating liquors—4th and 5th Amendments to the United States Constitution—Article i, section 8, of State Constitution.*

1. The constitutional rights of the citizen to be protected against unlawful searches and seizures and being compelled to give evidence against himself, as guaranteed under the 4th and 5th Amendments to the United States Constitution and under art. i, § 8, of the Constitution of Pennsylvania, are violated when officers of the law, while he is in custody for violating the traffic rules of the municipality, pry open the doors of his truck without a search warrant to obtain evidence of his guilt in transporting intoxicating liquors in violation of the National Prohibition Act, and if, as a result of such a search, he is held on a charge of unlawfully transporting intoxicating liquors, he is entitled to be released on *habeas corpus*.

2. To justify search and seizure without warrant, the officer must have direct personal knowledge through his hearing, sight or other sense of the commission of the crime by the accused.

*Habeas corpus.* Q. S. Phila. Co., July T., 1923, Miscellaneous Docket.

*Henry M. Stevenson,* for plaintiff.

*Joseph K. Willing,* Assistant District Attorney, for defendant.

McDevitt, J., Oct. 29, 1923.—The question of the right of policemen to search and seize property on the theory of "discovery" of law violations, as defined by section 9 of the Enforcement Act, comes before the court on a writ of *habeas corpus* to discharge Robert Kohler, charged with unlawfully transporting intoxicating liquor.

The relator was first taken into custody charged with a violation of the traffic rules of the City of Philadelphia. While in custody, the doors of his truck were pried open by policemen and kegs containing what resembled beer discovered therein.

Since the adoption and ratification of the Prohibition Amendment to the Constitution of the United States and the enactment of enforcement laws by Congress and the several states, some well-meaning but overzealous persons have permitted their enthusiasm to stampede their sober judgment and act as though the rights of personal security guaranteed by the Constitution of the United States, as well as by every state constitution, have been eliminated from the category of our liberties; and, the opinions of the highest courts in the land to the contrary have been apparently unheard, for they have been persistently unheeded. Before the Revolution, men did such things with writs of assistance, and nowadays zeal approaching fanaticism seems to inspire persons to do without any written form of warrant what the most far-reaching warrant would not permit. Our fundamental laws are intolerant of every form of unreasonable search and seizure and of every argument that opposes the doctrine of individual security in one's person, home, effects and property. These provisions are the foundation stones of our form of government and should not be permitted to be overturned by well-meaning but misguided citizens in their lawless prosecution of what they deem a righteous cause. Such constitutional provisions must remain inflexible if they are to be saved from destruction.

The 18th Amendment to the United States Constitution is carried out by the Volstead Act, and section 26 of that act provides when a police officer may arrest without warrant for violations of the act.

Similar provisions are incorporated in section 9 of the State Enforcement Act, but these acts are subject to interpretation by the same rules of law as are all other acts.

In construing such acts, regard must be had for paragraph 8 of article I of the Constitution of Pennsylvania and the 4th and 5th Amendments of the United States Constitution, the former guaranteeing the security of persons, houses, papers and possessions, and the latter protecting citizens from incriminating themselves.

With these constitutional and statutory premises before us, we come to a consideration of the following questions:

1. Is the police power of the Commonwealth justified in conducting unlimited searches and seizures of property under the control and in the possession of prisoners taken into custody on other charges?

2. Was the "discovery" of the inquisitive policeman, armed with a crowbar instead of a search warrant, such as was contemplated by the enforcement or enabling acts?

3. Was the arrest, based upon such discovery, proper under the Constitutions and laws of the State and Nation?

4. Is the evidence thus procured admissible against the defendant?

"Discover" has no greater or less importance in the construction of the enforcement acts than any other word, and is to be taken in its plain, ordinary, every-day meaning of "finding out, ascertain, espy, detect," and that contemplates a situation found out, revealed or disclosed, rather than mere action that may or may not result in disclosures or revelations. It does not include suspicion, conjecture or surmise. An arrest and seizure without a search warrant and founded upon such discovery cannot be upheld if such discovery was the result of such an investigation as was contemplated only by a search warrant. The method of procuring and executing search warrants is clearly defined by judicial interpretations. It cannot be presumed that law-making bodies that have jealously guarded the rights of citizens and protected them from harassments and violations would provide a subterfuge for invading and destroying those prerogatives. The enforcement of one law neither contemplates nor justifies the violation of other statutory and constitutional prohibitions. To justify search and seizure without warrant, the officer must have direct personal knowledge through his hearing, sight or other sense of the commission of the crime by the accused. In fact, the only provisions in the Federal and state acts permitting searches relate to search · by warrant. There are other prohibitory amendments in the United States Constitution besides the 18th, to wit, the 4th and 5th.

When an officer is justified in making an arrest upon reasonable suspicion, based either on his own knowledge or the information of others, but without a warrant, is ably set forth by the late President Judge Rice in Rarick *v.* McManomon, 17 Pa. Superior Ct. 154.

While violations of the 18th Amendment must be stopped and the guilty punished, at the same time the whole fabric of law must be observed, as well as enforced, and no person, no matter how guilty, shall be compelled to give evidence against himself; such would be the direct effect of using evidence unlawfully procured by inquisitorial searches and seizures without pre-existing evidence of probable guilt. Law enforcement officers must observe both these rules of law, for it is accepted as the highest law that regard be had for the public welfare; that the law in its executive capacity should not work a wrong and that common error should not pass current as law.

The 5th Amendment of the Federal Constitution grants an absolute immunity. This must be so, or we are back to the practices of the mediæval ages. The possible escape of the guilty is the price paid for the more than possible oppression which might otherwise be practiced.

3 D. & C.

Com. ex rel. Kohler v. Turnkey of Central Police Station.

The findings of legal conclusions or of probable cause from the exhibited facts is a judicial function and cannot be delegated to the accuser.

The disregard of constitutional rights of individuals may not be overlooked because of advantage to the Government: Keefe v. Clark (U. S. Dist. Ct., Mass.), 287 Fed. Repr. 372.

Evidence obtained while conducting an unlawful search is inadmissible against defendant: United States v. Dziadus (U. S. Dist. Ct., N. D., W. Va.), 289 Fed. Repr. 837.

As far back as Boyd v. United States, 116 U. S. 616, Mr. Justice Bradley laid down the following doctrine relating to the invasion of the sanctity of the home and the privacies of life: "It is not the breaking of his doors and the rummaging of his drawers that constitutes the essence of the offence, but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offence—it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation, but any forcible and compulsory extortion of a man's own testimony or of his private papers, to be used as evidence to convict him of crime or to forfeit his goods, is within the condemnation of that judgment. In this regard, the 4th and 5th Amendments run almost into each other."

In the construction of the 4th and 5th Amendments of our Federal Constitution, four leading United States Supreme Court cases stand out and clearly set forth the rules, both with respect to search and seizure and the reception of evidence secured unlawfully. These cases are Boyd v. United States, 116 U. S. 616; Adams v. New York, 192 U. S. 585; Weeks v. United States, 232 U. S. 383, and Gouled v. United States, 255 U. S. 298, from which cases two rules have been deducted, viz.:

"1. It is the duty of courts to be watchful for the constitutional rights of the citizen and against any stealthy encroachment thereon.

"2. In the trial of a criminal case, the court will not take notice of the manner in which witnesses have possessed themselves of papers or other articles of personal property which are material and properly offered in evidence, unless the facts of the case require it to do so."

Both of these rules have been followed by the Federal Government without variance, and by most of the states, including our own; the first rule in the case of Germantown Trust Co. et al. v. Powell, 260 Pa. 181, and the second in the case of of Com. v. Vigliotti, 75 Pa. Superior Ct. 366, and affirmed by the Supreme Court, 271 Pa. 10; 258 U. S. 403.

In Connelly v. United States, 275 Fed. Repr. 509, it was held that intoxicating liquor cannot be seized without a warrant and must be returned to the owner.

In United States v. Rembert, 284 Fed. Repr. 996, the court dilated at considerable length on the duty of a law-abiding citizen when accosted by an officer. It said:

"It must be premised that where an officer politely and decently, without physical threat, has assumed to act in his official capacity, he is acting de facto, if not de jure, and a peaceful citizen should not forcibly resent the action, even though he knows the officer is, as to the act, greatly exceeding his authority, resting confidently upon the belief that this submission will not impair any of his constitutional rights; for, as the courts have repeatedly held, such action will not be taken to be a consent to an unlawful search or arrest, but merely a peaceful submission to officers of the law: United States v. Slusser (D. C.), 270 Fed. Repr. 818; Youman v. Com., 189 Ky. 152, 224 S.

W. Repr. 860, 864, 13 Am. Law Reps. 1303; Amos v. United States, 255 U. S. 313, 317, 41 Supr. Ct. 266, 65 Law Ed., 654.

"Any other course on the part of the citizen would place him in the difficult and dangerous position of undertaking to protect by force the rights which, in his opinion, the officers are seeking to impair, when it may turn out that the officer in fact has authority, and his action may in fact be legal. This principle, that the courts of the United States will not put the citizen to the alternative of contesting by force with officers, or waiving his constitutional rights, runs throughout the Federal decisions, and gives character and meaning to their emphatic holding that evidence illegally obtained cannot be used, and that the submission of a citizen to an officer cannot deprive him of his constitutional rights, unless the evidence clearly shows that the submission was really voluntary and with a desire to invite a search and not done merely to avoid resistance."

Again, on page 1007: "Officers should be very loath to interfere with the rights of citizens, and should not arrest on mere suspicion, and wherever an arrest and consequent search of a person or vehicle is made without warrant, the Government must be prepared to show, if it expects the evidence to be admissible, that the arrest and search was not a mere exploratory enterprise for the purpose of discovery, but was based upon a sincere belief, with reasonable grounds therefor, that an offence had been committed by the person or vehicle arrested."

At common law, a peace officer had the right to arrest without a warrant for—

1. A felony. (a) Committed or attempted in his presence or within his view; (b) to prevent the commission of a felony; (c) upon reasonable suspicion of or of probable grounds to suspect one to be committing a felony.

2. A breach of the peace.

He had no power under the common law, as an officer, to make an arrest without a warrant for any offence less than a felony, with the single exception of a breach of the peace.

"The term 'breach of the peace' is generic and includes all violations of such peace or order or acts tending to the disturbance thereof:" 5 Cyc., 1024.

"Breaches of the peace generally manifest themselves by some outward, visible, audible or violent demonstration; not from quiet, orderly and peaceable acts secretly done, though such acts may be mala prohibita:" 8 Ruling Case Law, 285.

The violations of the State enforcement act are misdemeanors and not felonies, and must be viewed accordingly.

If a citizen's automobile or other vehicle can be stopped, searched and seized under police zeal to enforce one specific act of assembly, it naturally follows that every citizen may be held up and searched to ascertain if he carries a deadly weapon; if he possesses stolen goods; if he is under the influence of liquor; if he possesses narcotic drugs; if he carries burglar's tools or possesses any other incriminating evidence on his person or in his vehicle. Enthusiasm for enforcement and conviction under this particular statute cannot be permitted to divert attention from every other avenue of law enforcement and law observance. It cannot be construed as the intention of the framers of the Constitution or the several acts of assembly that safeguards of every description are to be ignored in an effort to drive into submission by Soviet methods a small number of citizens who are reluctant to accept immediately an act of assembly that is written indelibly upon the statute books, but which they must assimilate gradually.

3 D. & C.

It is a well-settled maxim of law that every innovation occasions more harm and derangement of order by its novelty than benefit by its abstract utility. Eventually, the unfriendly opponents of this act will succumb, for, tiring of deception, chicanery and trickery, they will voluntarily observe the law. It was never intended, however, that the vast majority of the pedestrians and travelers, who are law-abiding, should be terrorized on our highways and byways in order that a nominal number may be the more quickly educated.

For the reasons above set forth, the relator is discharged.

NOTE.—See Com. v. Kekic, 3 D. & C. 273.