## Commonwealth v. McGinty.

*Liquor law—Seizure of liquors—Evidence—Return of liquors.*

1. Where liquors have been seized and used as evidence in a prosecution under the liquor laws, they cannot be returned to their original owner, and this is the case, although they may have been unlawfully seized.

2. Liquors unlawfully possessed are contraband, and there is no property rights in them.

3. Liquors taken from the residence of a defendant, although seized under a warrant only directing a search of his hotel, may be used in evidence in a prosecution against him for violating the liquor laws.

Rule to return property seized and suppress evidence. Rule for new trial. Q. S. Susquehanna Co., Aug. Sess., 1923, No. 65.

*John Ferguson*, District Attorney, for plaintiff.

*T. A. Doherty*, for defendant.

SMITH, P. J., Nov. 20, 1923.—As a result of discoveries and seizure of intoxicating liquors upon a search warrant, the above defendant was arrested for violation of the Pennsylvania statute prohibiting their sale, gift, manufacture, etc., for beverage purposes, approved March 27, 1923, P. L. 34. Indictment found by grand jury; following which a petition of the defendant was presented, upon which we granted a rule to show cause why such property so seized should not be returned to the defendant and the Commonwealth's officers should not be restrained from using or introducing any such as evidence against him on the trial; such rule relating to such liquors as were seized at defendant's residence only, upon the ground that such search and seizure was illegal because the search warrant only directed a search of defendant's hotel premises.

Depositions in support of the rule disclosed the articles taken from the house to have been two barrels of whiskey, one five-gallon can of alcohol, three empty drums, quantity of glycerine and caramel and a quantity of whiskey bottles. That the glycerine and caramel, by the declaration of the defendant, were for the use in the manufacture of intoxicating liquor and the receptacles apparently to receive and retain such liquor.

Aug. 20, 1923, we filed a short order discharging the rule, at the time stating orally that we were chiefly influenced to this conclusion by the language of section 11 *(a)*, declaring that "no property rights shall exist" in such liquor, but that "they shall be deemed contraband and shall be forfeited to the Commonwealth;" and, further, we stated our purpose to later file an opinion, which we had then no opportunity to do.

Later, upon trial, the defendant was found guilty under the indictment, and we granted a rule for new trial upon the following three reasons: "1. The court erred in admitting as evidence the articles taken from defendant's residence. 2. The court erred in admitting the petition of the defendant upon formal rule to show cause. 3. The court erred in admitting six bottles of alleged liquor as not sufficiently identified."

These reasons raise substantially the same questions for our determination as upon the previous rule discharged by us, as above stated, and the present opinion will answer for both proceedings.

It is strongly urged by the learned counsel for the defendant that the reasoning and conclusions, *contra* to those we have advanced, by Fox, J., in Com. v. Kekic, 3 D. & C. 273, are correct.

We have a high regard for the decisions of the lower courts and are loath to differ therefrom, both for that reason and that uniformity of decisions on the same subject in all the judicial districts is an important asset to certainty, but it will be admitted we are not bound by them, and in fact, in this particular instance, we conclude our discussion and finding will not be found to be so radically inconsistent with those of the learned jurist to whom we above refer, and when we note the absence of any reference in his opinion to section 11 *(a)* of the statute, or to the opinion of Trexler, J., in Com. v. Kaiser, 80 Pa. Superior Ct. 26, interpreting and applying the statute relating to gambling devices, we conclude they had not been brought to his attention.

For our present purpose we are led to agree with Judge Fox in the foundation laid in his discussion of the office of a search warrant, its requisites of allegation, its limitations, etc., in an opinion evincing an exhaustive and learned examination and interpretation of the voluminous authorities cited, which will be appreciated and no doubt frequently cited by both bench and bar in all jurisdictions. Were we to decide the case at bar upon the questions thus discussed, we think we should have come to the same conclusion and made absolute the rule to restore, etc., in the present case; but we still adhere to our ruling for reasons we now state. There is a conspicuous parallel between the provisions of the Liquor Act of 1923 and those of the sections of the Penal Code of March 31, 1860, P. L. 382. The latter declares the maintenance of a gambling-house and devices for that purpose a misdemeanor, with penalty attached upon conviction; the former applies the same designation and a penalty to traffic in intoxicating liquors as prohibited therein. Both statutes provide for the discovery, seizure and destruction of the instrumentalities and devices for gambling, in the one case, and of like instrumentalities of manufacture and products, in the other, with modes of procedure not greatly dissimilar to effect the purpose. The statute relating to gambling provides: "And the court, upon hearing the parties, if they should appear, if satisfied that such devices or machine was employed and used for the purpose of unlawful gambling, shall adjudge the same forfeited and order it publicly destroyed."

The Liquor Act of 1923 states in much stronger language, section 11 *(a)*, first paragraph, that "no property rights shall exist in intoxicating liquor or property designed for the manufacture or sale of intoxicating liquor intended for use in violating any of the provisions of this act, . . . the same shall be deemed contraband and shall be forfeited to the Commonwealth."

These analogies imply like analogies of interpretation, which in fact is a method employed by the decisions of the courts.

"The general rule, of course, is that when the legislature re-enacts language which has received judicial construction, it carries the same construction with it:" Sproul, Receiver, v. Murray, 156 Pa. 293.

The primary question at issue is the nature of property interest of the defendant in the liquor and instrumentalities and materials of manufacture so recovered at his residence.

That, under the depositions upon the former rule and evidence at the trial, they were in defendant's possession there is no doubt, and of the character

4 D. & C.

and purpose of such possession there was no explanation; under the 4th section of the act, such possession is *"prima facie* evidence that the same was acquired, possessed and used in violation of this act," and *prima facie,* as here used, we interpret to mean the same as defined by the court where occuring in an analogous statute in Maine in State *v.* Liquors (Me.), 12 Atl. Repr. 794 (795). "They mean that such evidence is competent and sufficient to justify a jury in finding a defendant guilty, providing it does in fact satisfy them of his guilt beyond a reasonable doubt, and not otherwise."

This leaves in force the principle of trial by jury in Pennsylvania that the credibility of the witness is for the jury; and a suggestive element of the "unlawfulness" of the possession by the defendant at bar is the large quantity of whiskey so found, *i. e.,* two barrels. In any event, the jury so found. We are, therefore, forced to treat said liquor and other articles, as stated in the statute, as *"contraband,"* that is, as "against law or treaty," prohibited (Webster's Dictionary; Black's Law Dictionary), and in which, as the statute declares, "no property rights shall exist."

Recurring to the statute against gambling devices, in which we have already cited Com. *v.* Kaiser, 80 Pa. Superior Ct. 26, we note that, as to such devices, the court refers with approval to the decisions of other jurisdictions where they are termed "outlaws," and, upon appeal from the order of the Court of Quarter Sessions directing ninety-two slot machines to be destroyed, affirmed, although it appeared that the regularity or lawfulness of the methods and means by which they came within the control of the court in the first instance might be questionable, Trexler, J., in his opinion, stating: "They are not under the ordinary laws relating to personal property. The court can in a summary manner, after their nature is disclosed to the satisfaction of the court, order their destruction so as to effectually prevent their use for the evil purposes for which they were designed. It would be absurd to hold that, having such control, the court should be compelled to return such devices to the original owner because when originally seized they were to be used as evidence against him, . . . such machines being incapable of lawful use, the owner has no standing . . . to assert any property rights in them."

The strictures of the above judicial utterances are apropos to the "contraband" articles in the present issue; their character as such for the purposes of the former rule was established by the depositions and justified our action in discharging it, and for the present rule for a new trial by the evidence adduced at the last trial, unless we sustain the present application, which leads us to the question whether we erred in admitting such property and the evidence of witnesses to facts concerning it. It is clear that if we had made the former rule absolute, it would, of course, follow that such evidence would have been necessarily excluded, but if we were right in discharging it, then this "contraband" property was still within the control of the court; and even if unlawfully seized and control obtained, then we were correct in our admission of evidence complained of, under the authority of Com. *v.* Vigliotti, 75 Pa. Superior Ct. 366, where, discussing an identical proposition as here, the court said (page 378) : "Conceding that the packages were taken from the store and residence of the defendant without authority, the admissibility of the evidence is not affected by the illegality of the means through which it was obtained. . . . If a wrong was done the owner, his remedy is in a different forum." This decision was affirmed by the Supreme Court in 271 Pa. 10, and by the United States Supreme Court in 258 U. S. 403.

As an additional reason for our discharge of the previous rule, we suggest that the latter portion of the language above quoted from the opinion of the

Superior Court in 75 Pa. Superior Ct. 378, viz., "the owner has a remedy in a different forum," is a clear expression of the writer, indicating the Court of Quarter Sessions has no jurisdiction to afford the defendant relief thus sought. The term "forum" means "the place where a remedy is sought;" "jurisdiction," a court of justice (19 Cyc., 1448), "forum." Prefixing to either of these terms the word "another," as used by the learned judge, must necessarily mean some other court than the Quarter Sessions. Where this may be or in what mode, it is not permissible for us here to discuss. It will be proper and timely only when the question may arise.

Although consent of the defendant, through his attorney, has been filed that the rule for new trial be discharged and short order to that effect has been entered, nevertheless, we have deemed the preparing and filing of this opinion as advisable, in view of the interesting question to be disposed of, as the previous rule to return property to the defendant and enjoin the use of the same as evidence, as we have already said, has already been discharged and likewise an order to the same effect in the present rule.

From Gerritt E. Gardner, Montrose, Pa.