## Commonwealth *v.* Vigliotti et al., Appellants.

*Liquor laws—Constitution of United States—Eighteenth amend-
ment—Volstead Act of Congress of Oct. 28, 1919, and Penna. Stat-
ute of May 13, 1887, P. L. 108—Statutes—Amendment of state
laws—Police power.*

1. The 18th Amendment to the Constitution of the United States and the Act of Congress of Oct. 28, 1919, do not annul the Pennsylvania Act of May 13, 1887, P. L. 108, popularly known as the Brooks Law, entitled "An act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors, or any admixtures thereof."

2. The Brooks Law of 1887, survives as Pennsylvania's own police power method of officially listing and adequately controlling the customary sources of general supply and distribution, to the peoples within her borders, of those kinds of liquors among which intoxicating beverages are usually found, and she may thus assist in prohibiting their illegal use as such.

3. The statute, although not intended for that specific purpose, is adapted to serve as an instrument with which to perform, at least in part, Pennsylvania's right and obligation to enforce, "by appropriate legislation," the 18th Amendment.

Argued May 2, 1921. Appeals, Nos. 456 to 462, Jan. T., 1921, inclusive, and No. 42, Jan. T., 1922, by defendants, from judgments of the Superior Court, Nos. 72-80, inclusive, affirming judgments of Q. S. Fayette Co., Nos. 59, 60, 80, 81, 96 and 122, June T., 1920, on verdict of guilty of selling liquor without a license, in cases of Commonwealth v. Tony Vigliotti and seven other defendants. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SADLER, JJ. Affirmed.

Indictments for selling liquor without a license.

Appeals from Superior Court.   See 75 Pa. Superior Ct. 366.

The opinion of the Supreme Court states the case.

*Errors assigned* were judgments of Superior Court, quoting them.

*E. C. Higbee,* for Tony Vigliotti and Rosie Vigliotti, appellants, cited: Ruppert v. Caffey, 251 U. S. 264; Purity Extract Co. v. Lynch, 226 U. S. 192; Rhode Island v. Palmer, 253 U. S. B. 350; Savage v. Jones, 225 U. S. 501; In re Rahrer, 140 U. S. 545; State v. Green, 86 Southern 919; Com. v. Nickerson, 128 N. E. 273 (Mass.); State ex rel. v. District Court, 194 Pac. 308 (Mont.); State v. Fore, 105 S. E. 334 (N. C.); People v. Foley, 184 N. Y. Supp. 270; Allen v. Com., 105 S. E. 589 (Va.); Jones v. Hicks, 104 S. E. 771 (Ga.); Allen v. Com., 105 S. E. 589; Breslin's Case, 32 N. Y. 210.

*A. E. Jones,* with him *Carr & Carr,* and *Brownfield, Goodstein & McDaniels,* for Mike Esper, Mike Mondalek, Mary Saab, Frank Williams, Marchie Esper and Kalman Krizon, appellants, cited: State ex rel. v. Donahey, 125 N. E. 908; State v. Tonks, 15 R. I. 385; Draper v. State, 6 Ga. App. 12; Steffy v. Town of Monroe, 35 N. E. 121.

*William A. Miller,* District Attorney, with him *N. W. Rosenberg,* Assistant District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 26, 1921:

The several defendants at bar were convicted at a time subsequent to the date of the 18th Amendment to the Constitution of the United States and after the Act of Congress was passed for its enforcement.   The question involved is, Do these federal laws annul the state law

under which defendants were indicted for selling liquor without a license?

The Pennsylvania Act of May 13, 1887, P. L. 108, called the Brooks Law, is entitled "An Act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors, or any admixtures thereof." Any liquor containing distilled alcohol is spirituous; all having alcohol as a result of fermentation are vinous and those with alcohol produced by artificial processes, such as the brewing of beer, come within the malt or brewed class; these, together, are generally supposed to include practically all kinds of beverages containing even a trace of alcohol.

The Brooks Law has nineteen sections, and neither the term "intoxicating liquors" nor its equivalent is found in any of them till we reach the fourth, which makes it the duty of constables to return all places, "licensed and unlicensed," that are "engaged in selling intoxicating liquors"; then the sixteenth section renders it unnecessary for druggists to obtain a license under the statute, but provides "they shall not sell intoxicating liquors except upon the written prescription of a regularly registered physician," and "any person who shall wilfully prescribe any intoxicating liquors as a beverage to persons of known intemperate habits shall be guilty of a misdemeanor." These provisions and a prohibition, in the seventeenth section, against selling to persons visibly affected by "intoxicating drink," are absolutely the only references in the statute to "intoxicating liquors," and it will be observed that none of them have to do with defining the kinds of liquors comprehended by the licenses which this legislation requires. In fact we early decided that the liquors referred to in the licensing parts of the Act of 1887 need not have an "intoxicating quality": see Com. v. Reyburg, 122 Pa. 299, 304.

The sale of such liquors was permitted under the Brooks Law, because, and simply because, not forbid-

den; although there can be no doubt it was intended to be permitted to the limited extent there tacitly allowed.

The statute in question was put upon the books at a time when strict prohibition was being agitated in the State, the same legislature which passed it formulating a constitutional amendment to that end, for submission to the people (1887, P. L. 414); and it may well be the thought was in the minds of the law-makers that not only did this piece of legislation (the Brooks Law) serve the then present purposes, but it would fit the situation, till a better instrument could be devised, in the event of prohibition coming to pass. At least this suggestion is warranted, not only by the significant absence from the act of the term "intoxicating liquors," in connection with the license system there ordained (such term or an equivalent being rather generally used in the earlier Pennsylvania liquor laws), but also by the whole structure of the statute; for it is so drawn that, by the elimination,—through subsequent legislation or otherwise,—of the possibility of intoxicating liquors being sold thereunder, its terms would admirably suit the control of the business of dealing in those kinds of liquors which most readily may become of the intoxicating class, or those liquors under the guise of which intoxicating beverages can be most easily trafficked in. This course,—that is, a well regulated license system, to govern the general supply and distribution of all liquors of the character just described,—in the view of many thoughtful people, is considered one of the very best aids to efficient control, and, through such control, actual enforcement of practical prohibition. In this connection, witness the series of amendments made to the Brooks Law by our last legislature, which still retain the license plan.

When looked at from the standpoint we have indicated, there is nothing in the Pennsylvania Act so inconsistent with the 18th Amendment to the Constitution of

the United States (which reads thus: "Section 1, After one year from the ratification of this article, the manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof, for beverage purposes, is hereby prohibited. Section 2. The Congress and several states shall have concurrent power to enforce this article by appropriate legislation"), or to the Act of Congress passed October 28, 1919, called the Volstead Act (which prohibits liquors for beverage purposes that contain one-half of one per cent of alcohol or more), as to require us to hold our statute annulled by the federal law.

The police power of the sovereign Commonwealth of Pennsylvania remains unimpaired, so far as the right to protect its citizens, in its own way, from the evil effects of intoxicating liquors is concerned, except, of course, that, since the 18th Amendment, under no statute may it permit the sale, use or possession of liquors of a kind or in a manner prohibited by the federal law. Aside from these limitations, all our acts of assembly stand, which are not inconsistent with the amendment and cognate federal statutes, and, as already stated, the Act of 1887 cannot be thus classed; any of its provisions in conflict with the federal law are annulled; but, as the prevailing scheme of the statute and the parts thereof under which the indictments at bar were drawn, are not so in conflict, the act was properly held to be in force for present purposes.

The nearest analogy within our own law, on the point of concurrent exercise of the police power, which at all approximates the situation presented by the new national law and the previously enacted laws of the several states, so far as the effect of the former upon the latter is concerned, is that shown by the early regulations, governing automobiles upon the highways of this State, at a time when local jurisdiction in that field was very generally permitted by the Commonwealth to its

several political subdivisions.   In Brazier v. Phila., 215 Pa. 297, 300, 301, while conceding "the paramount authority of the law-making power of the State" over that of any one of its cities,—just as here, since the 18th Amendment, on the subject there dealt with, like paramount authority must be conceded to the national government, over any one of the states,—speaking of the effect, on a local automobile regulatory ordinance, of a subsequently enacted general law, providing "State regulations for use of automobiles," we held that, notwith-standing the enactment of the general law by the paramount authority, the ordinance stood intact, since the latter was "not inconsistent" with the former and was "adapted" to carry out its purpose.   On the same theory, —but, as this is a sovereign State, with stronger grounds of support,—we conclude that the Brooks Law still survives, as Pennsylvania's own police power method of officially listing and adequately controlling the customary sources of general supply and distribution, to the peoples within her borders, of those kinds of liquors among which intoxicating beverages are usually found, and she may thus assist in prohibiting their illegal use as such; although, of course, not intended for that specific purpose, the statute is adapted to serve as an instrument with which to perform, at least in part, this State's right and obligation to enforce, "by appropriate legislation," the 18th Amendment.

If the Brooks Law had been written for the express or prime purpose of deriving revenue from licensing the sale and regulating and encouraging the use of intoxicating liquors, as appellants seem to think, and all the numerous features therein of a strictly prohibitory nature, of which there are many, were subordinate to what they take to be its real purpose, then it might well be said there was such incompatibility between it and the 18th Amendment that the two could not stand together; but, as we have shown, this is not the case.   On the contrary, while the Brooks Law recognizes the ex-

istence of intoxicating liquors, and, by not forbidding, tacitly permits their sale and use, its whole tenor is one of restraint against the recognized evils which flow therefrom, and, as previously said, so far as the licensing features of the act are concerned, the scheme of the statute is to regulate the direct distribution to the people not of intoxicating liquors but of those kinds of liquors among which the former is usually found, and thus to control such distribution for the enforcement of laws regulating the actual use of intoxicating liquors, no matter what those laws may prove to be from time to time. If man were so constituted that legally ordained prohibition would, in and of itself, universally restrain his appetite for strong drink, after the 18th Amendment, no such regulation would seem necessary, but, unfortunately, he is not, and of this fact we take judicial notice; since the normal appetite for vinous, spirituous, malt and brewed liquors of an intoxicating nature still continues, and, so far as we can see, will continue for some time to come, and since those beverages, whether intoxicating or not, very largely constitute the drink of the people, it is obvious that a statute such as the Pennsylvania Act of 1887, requiring all dealers in the kinds of liquors just named to be licensed, and strictly regulating the trade therein, by thus making it possible to keep a close watch over the character of men who are given a license, and over their conduct after the privilege is granted, is capable of serving a useful purpose in preventing the illicit distribution to the people of intoxicating drinks by those in control of the usual source of beverage supply. To this extent at least, it is adapted to present conditions, and therefore not in conflict with the new laws which brought about those conditions.

The Pennsylvania plan may prove entirely adequate to the occasion, or, as some predict, it may prove practically inadequate, but these are matters of fact with which we have naught to do; of its legal sufficiency, as a piece of subsisting legislation, which is neither incon-

sistent with nor antagonistic to the recently ordained federal law, this court, for the reasons already given, entertains no doubt, and that is all we are charged to pass upon.

Many decisions, relating to the general subject in hand, have been cited to us by counsel on both sides. Some of these, from other states, uphold their existing liquor laws, while others decide to the contrary (the cases in question, together with the relevant United States Supreme Court decisions, will be mentioned by the Reporter in his notes published in connection herewith) ; but, since this court views the matter from a somewhat different angle than that taken by the courts of the other states, under their respective acts of assembly, which, perhaps, radically differ from our own, we think no useful purpose would be served by discussion of these outside decisions; nor, from our point of view, is it necessary to discuss, further, appellant's contentions against the positions taken by the Superior Court of this State in deciding the present controversies,—it is sufficient to say that we find no error in the ultimate conclusions of that tribunal, represented by its determination of the several cases now before us for review.

The judgments appealed from are affirmed, and it is directed that the orders of the Superior Court, contained in its affirmance of these judgments, be forthwith complied with.