## Susquehanna County Liquor Licenses.

*Liquor law—18th Amendment—Constitutionality of Act of May 5, 1921 (Woner Act)—Art. iii, sections 3 and 6, of Constitution.*

1. The Act of May 5, 1921, P. L. 407 (known as the Woner Act), amending the Brooks High License Act of May 13, 1887, P. L. 108, violates art. 3, § 3, of the Constitution, requiring the subject of a bill to be clearly expressed in its title, in that it attempts to amend other acts of assembly not referred to in the title.

2. Section 1 of the Act of May 5, 1921, P. L. 407, which defines the phrase "vinous, spirituous, malt or brewed liquors" and the word "liquors" to "mean vinous, spirituous, malt or brewed liquors fit for beverage purposes other than such as are from time to time determined and found to be intoxicating by Act of Congress," etc., and defines the phrase "intoxicating liquors" to mean "anything found and determined from time to time to be intoxicating by Act of Congress," etc., violates art. 3, § 6, of the Constitution, in that it attempts to write into the statutes of Pennsylvania the present and future Federal legislation on the subject of intoxicating liquors by reference only, *i. e.*, without re-enacting and republishing the statutes so attempted to be incorporated into the Pennsylvania law.

3. Other sections of the Act of May 5, 1921, P. L. 407, relating to the petitions for licenses are also void, because they are so necessarily dependent upon, interlocked and connected with the first section that it may be presumed that the legislature would not have passed one without the other.

4. The Act of 1921 being void, the petition must conform to the Act of 1887; and if it fails to allege that the place to be licensed is necessary or to contain the names of two sureties, it is defective, and license will be refused.

5. The Act of 1887 places no restrictions or limitations upon the licensee concerning the alcoholic contents of the liquors which can be sold under the law, and, *it seems*, the court is without power in granting a license to impose such restrictions or limitations upon him without legislative authority.

*Semble.* The 18th Amendment, while it has not repealed the prohibitory sections of the license law of Pennsylvania, does repeal that portion of the Act of 1887 which authorizes the courts to grant licenses for the sale of liquors.

Applications for licenses to sell liquors. Q. S. Susquehanna Co., January Miscellaneous Sess., 1922, Nos. 1 to 28.

*Thomas A. Doherty, John M. Kelly, William J. Maxey* and *Frank M. Gardiner,* for petitioners.

*William A. Skinner,* for exceptants.

SMITH, P. J., Jan. 24, 1922.— . . . The constitutional objections interposed, and which apply to all *retail* applications only, for the reason that the "Woner" amending act is amending only of the "Brooks" High License Statute, which does not relate to applications to sell at wholesale, are *verbatim* thus:

"1. The Act of May 5, 1921, P. L. 407, known as the amendment of the Brooks High License Law, and under which the said application is drawn and filed, is unconstitutional and void:

"*(a)* Because in violation of art. III, § 3, of the Constitution of Pennsylvania, requiring the subject to be clearly expressed in the title; the said act purporting to amend and repeal the Act of April 24, 1901, P. L. 102, and the Act of Feb. 26, 1919, P. L. 10, without notice thereof in the title.

"*(b)* Because in violation of art. III, § 6, of the Constitution of Pennsylvania, prohibiting the revival, amendment, extension or conferring of any law by statute by reference to title only and without re-enactment and publication at length; the said Act of May 5, 1921, attempting to incorporate as a part of the statute law of Pennsylvania Acts of Congress in force or to be hereafter enacted without reference even to the title or date and without re-enactment or publication."

We will consider these *seriatim*, and—

First, as to *(a)*: Is the amending (Woner) Act of 1921 violative of section 3, art. III, of the Pennsylvania Constitution? This section is as follows: "No bill, except appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

The title of the amending Act of 1921, now attacked as unconstitutional, is thus worded: "An act amending an act approved the 13th day of May, 1887, entitled 'An act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors, or any admixtures thereof,' by prohibiting the manufacture, sale, offering for sale, transportation, importation, exportation, furnishing or possession, for beverage purposes, of anything determined and found to be intoxicating by Act of Congress passed pursuant to, and in the enforcement of, the Constitution of the United States of America; and by restraining and regulating the sale of vinous, spirituous, malt or brewed liquors, or any admixtures thereof, fit for beverage purposes, other than such as are, from time to time, determined and found to be intoxicating by any such Act of Congress."

The principal reason for urging the unconstitutionality of the entire act because of defective title is that no reference is therein made to the intermediary amendatory acts to the same Act of 1887, of April 24, 1901, and Feb. 26, 1919, cited as for amendment in sections 3 and 5 respectively of the amending Act of 1921 under consideration, either by title, section, date of approval, subject-matter or otherwise. We note that section 3 is amendatory of the 5th, and section 5 of the 8th section of the original Act of 1887, by omitting from the former the requirement of citation in license petition of the following clause, "That the place to be licensed is necessary for the accommodation of the traveling public," and also the requirement of recital in the same petition of the names and qualifications of sureties upon license bond. That amending section 5 changes the amount of license fees payable by the licensee, and omits the clause permitting payment of such in *instalments*.

It is to be further observed that both these amending sections 3 and 5 recite their amendment of sections of the original Act of 1887 *"as amended by an act,"* then reciting by title and date of approval of each intermediary amendatory act; and we may consider to what extent they are such, as well as being in themselves amendments of the original Act of 1887, being so denominated in their title as enacted, and which is repeated in the amending sections of the present 1921 amending act.

The rules governing the jurisdiction and duty of courts to pass upon the constitutionality of an act of the legislature are well established, and an excellent resumé of them appears in the opinion of Moschzisker, Justice (now Chief Justice), rendering his opinion in the case of Com. *v.* Mathues, 210 Pa. 372, 391-393, the chief of which, quoting authorities, is: "That every possible presumption and intendment must be made in favor of the constitutionality of an act, and the courts can only interfere in cases of clear and unquestioned violation of the fundamental law. The authority of the courts to declare statutes unconstitutional is a high responsibility and not to be exercised except in cases free from doubt, and all doubt is to be resolved in favor of the constitutionality of the act. . . . There is a presumption in favor of the constitutionality of a statute. . . . The uniform construction given to a provision of the Constitution with the silent acquiescence of the people, including the legal profession and the judiciary, . . . are proper elements of a legal judgment on the subject. If an act be susceptible of the interpretation which has been put upon it by long usage, the court will not disturb that construction." But even of this rule of hesitation at age and acquiescence, it

1 D. & C.

has been said by the Supreme Court in Kucker *v.* Sunlight Oil and Gas Co., 230 Pa. 528, in reversing the court below in refusing to declare the act there in question, for such reason, unconstitutional, at page 533: "If such an act is plainly in conflict with the organic law of the State, old age cannot give it life, and when the issue of its constitutionality is properly raised, it must be declared void. We have never ruled to the contrary."

The Pennsylvania Constitution distributes the functions of government to three classes of officers, *(a)* legislative; *(b)* judicial, and *(c)* executive, and each, acting within its lawful sphere and limitations, is absolute and controlling, and directly referring to the constitutional question now presented, the Supreme Court has said in Provident L. & T. Co. *v.* Hammond, 230 Pa. 407, 414: "It was not the intention to interfere with or prevent the legislature from freely enacting proper legislation, but the purpose was to prevent fraud, by requiring the title to the bill to disclose fully and clearly its subject, so that all interested parties could be heard for and against the proposed legislation if they desired."

It will be noticed that art. III, § 3, of the Constitution, provides that no "bill" *shall be passed* by the legislature. "Bill," as presented to that body for its action, is distinguished from "act" or "statute," which becomes such only after such action, and so prohibits for "the purpose of preventing fraud and deception, by requiring the title of the 'bill' to disclose fully and clearly its subject, so that all interested parties could be heard for and against the *proposed* legislation if they desired." If, therefore, the title is defective, it cannot be cured by the subsequent enactment of the bill into a law, by its being passed by the legislature and approved by the Governor. In passing upon the adequacy or sufficiency of the title, we must act regardless of the subsequent enactment of the bill into a law. "We cannot look beyond the title and into the body of the bill for information as to the subject of the proposed legislation. . . . The investigator has the right to rely solely on the title without scrutinizing the body of the bill for confirmation as to the subject of the proposed legislation. . . . If the title is defective, in that it contains (either) more than one subject, or only one subject which is not clearly expressed, the law which results from the passage of the bill contravenes the Constitution and is void:" Provident L. & T. Co. *v.* Hammond, 230 Pa. 407, 414; and "the title of an *amendatory* act entirely fails to express the subject when the act *to be amended* is not disclosed in some clear and defined manner:" Provident L. & T. Co. *v.* Hammond, 230 Pa. 407, 415.

The purpose of the constitutional provision is again stated to "prevent the passage of unknown and alien subjects which might be coiled up in the folds of the bill:" Dorsey's Appeal, 72 Pa. 192, 195, cited in 230 Pa. 411. The objection here made has been so many times interposed as to be termed a "well-worn objection:" Orlady, J., in Daugherty's Case, 51 Pa. Superior Ct. 120, 123.

The amending Act of 1921 in question, by its title, restricts its amending features of the original Act of 1887 to two enumerated particulars, viz.:

"1. By prohibiting the manufacture, sale, transportation, furnishing or possession, for beverage purposes, of anything determined and found to be intoxicating by Act of Congress pursuant to, and in the enforcement of, the Constitution of the United States of America; and

"2. By restraining and regulating the sale of vinous, spirituous, malt and brewed liquors, or any admixtures thereof, fit for beverage purposes, other than such as are from time to time determined and found to be intoxicating by any such Act of Congress."

Such restriction and limitation of purposes are distinguished from statutes whose title is general and relate to one general subject.

In the last case, no matter how the details may be multiplied in the body of the act, provided they are subordinate to the general purpose of it, as stated in its title and germane to its provisions, it is constitutional, notwithstanding art. III, § 3, of the Constitution: Gilbert's Estate, 227 Pa. 648; Page v. Carr, 232 Pa. 371; and we may add Com. v. Sellers, 130 Pa. 32, wherein the Brooks High License Act of 1887 was itself attacked and sustained on this principle. But in the first case, in which the title limits the changes made, its provisions are also limited to the subjects of change mentioned in the title (Com. v. Bender, 7 Pa. C. C. Reps. 620), because the title tends to mislead the investigator or inquirer by conveying the belief that one subject is the purpose of the bill, while another is embodied in the body of the bill: Union Passenger R. R. Co.'s Appeal, *81 Pa. 91.

This distinction has been frequently since repeated and emphasized. See Com. v. Thomas, 248 Pa. 256; Keystone State Building Ass'n v. Butterfield, 74 Pa. Superior Ct. 582; Central D. & P. Co. v. Homer City Borough, 242 Pa. 597.

The legal effect of sections 3 and 5 of the amending Act of 1921 is, the former to repeal clauses five and nine of the intermediary Amendment of 1901, requiring sureties, their qualifications, etc., required by the 1901 Amendment, and the requirement also recited of place licensed "necessary for accommodation," etc., as necessary to be incorporated in the petition for license; and the latter to eliminate the previously existing requirement of the court in which application for license is presented to determine whether such license "is necessary for the accommodation of the public," etc.: Reid v. Smoulter, 128 Pa. 324.

Does the title of the act, as sub-divided into two enumerations of subjects, give the required constitutional notice of the subject-matter of the two foregoing amendments effecting repeal and elimination to which we have referred?

Bearing in mind the rules imposing that clarity of conviction which we must possess in order to negative this inquiry, we conclude that both of said sections 3 and 5 are invalid because their subject-matter does not appear in the title of the act; this notwithstanding we are of the opinion that we would be required to hold the contrary had the language of the title of the amending act in question stopped with the words "or any admixtures thereof," immediately preceding the language which we have interpreted as expressing a two-fold limitation of subjects, not including those we now hold invalid, because even the latter would be then germane and cognate to the general title and within the scope and scheme of the subject of such title; the fact of their specific enumeration or of the intermediate Amendments of 1901 and 1919 being then so omitted would not avoid them as violating art. III, § 3, of the Constitution, under the authorities of Purvis v. Ross, 158 Pa. 20, and Smyers v. Beam, 158 Pa. 57, to which may be added, on the same point from another state, Saunders v. Provisional Municipality of Pensacola (Fla.), 4 So. Repr. 801.

Passing to the second constitutional objection to the act, that section 1 violates art. III, § 6, of the Pennsylvania Constitution, in that the Federal legislation upon the subject of intoxicating and non-intoxicating liquors therein recited is not "re-enacted and published at length," as required by the constitutional mandate as to laws "*extended* and *conferred*" by Pennsylvania statutes.

1 D. & C.

Of course, the same rules of interpretation and construction as to this article and section of the Constitution are the same which we have referred to and quoted heretofore in this opinion when discussing the objections as to *"title"* of the present statutory amendment and need not be repeated.

This article and section mean "that all statutes shall be self-explanatory and complete in their provisions:" Titusville Iron Works *v.* Keystone Oil Co., 122 Pa. 627; Barrett's Appeal, 116 Pa. 486.

It is interesting to note that in Pittsburgh's Petition, 138 Pa. 401, 407, the court below states that the above two citations are the only cases in which the Supreme Court has been called upon to give effect to this (constitutional) provision, citing also one from the Common Pleas of Philadelphia County, viz., Donohugh *v.* Roberts, 11 W. N. C. 186; in all three the acts then under examination were declared void, as violating this constitutional mandate. The statutory provision and judicial criticism thereof in the 11 W. N. C. 186 case are peculiarly appropriate to the present discussion of section 1 of the Act of 1921.

The statute there provided that the "receiver of taxes have all the powers," etc., conferred upon the officer whose place he is to fill, "by any and all acts of assembly heretofore passed," of which Hare, J., in his opinion, said: "Thus leaving the effect of the enactment *to be ascertained by a laborious search through the numerous volumes of the Pamphlet Laws.* It was even contended during the argument that there is nothing to preclude the legislature from providing that the duties of a particular office shall be performed by another branch or department of the administrator without designating them specifically, or save by a general reference to the statutes by which they were originally imposed. This position is untenable, both as regards the letter of the organic law or the object which it presumably has in view. What is bestowed on one man is not the less conferred upon him because it is at the same time taken from some other. Nor can it be said to be less important in the case of such a transfer that such legislation should take place in the light of day, with a full disclosure of the object and the means by which it is to be attained. The intention of the framers of the Constitution obviously was that the purport of every statute should appear on its face with sufficient clearness to enable the legislature to know what it was doing and *give notice to the community at large.*" (The italics are our own.) In quoting this case, the Supreme Court, in Pittsburgh's Petition, 138 Pa. 401, 429, says: "This mode of defining the powers of a newly-created officer is in violation of the letter and the spirit of the constitutional provision, and cannot be sustained."

Without discussing several more recent decisions, mostly lower court, declaring invalid similar statutory provisions for the same reason as in the above cases, we will note those of Com. *v.* Kephart, 17 Dist. R. 1051, which distinctly holds that [the Pure Food Law of June 1, 1907, P. L. 386, is void] under the constitutional provisions now being applied. "Certainly, a prior Act of Pennsylvania could not have been picked up bodily and thrown into the Act of June 1, 1907, by reference to its title only" [17 Dist. R. 1051]; and if it be doubted from the language of that court, in answer to his own query and citations following, as to whether "an Act of Congress be thus (by reference to title only) interpreted into said Act of Legislature?" If he decides it cannot, such negative clearly appears in the case of Com. *v.* Sweeney, 61 Pa. Superior Ct. 367, where, in the opinion on page 373, it is expressly stated: "Now, an Act of the Federal Congress is a law. Where its terms are applicable, it is as much the law of Pennsylvania as it is of Maine or California." But "to attempt to write in bulk the entire provisions of such a law into a

statute of Pennsylvania, by a reference only to its title, would be a legislative act clearly and expressly forbidden by the very language of our own Constitution." And in Com. v. Dougherty, 39 Pa. Superior Ct. 338, 345, in slightly different verbiage: "Under our Constitution, our legislature could not introduce into a statute, and make operative as a part of such statute, an Act of Congress by a mere reference to its title."

The three last cases so far discussed are so parallel with the one at bar as to force us to declare this 1st section of the Amendment of 1921 under view invalid, as in violation of both the letter and spirit of art. III, § 6, of the Pennsylvania Constitution, in which we are the more confident because of the wide scope and sweep of its, what we may term, "ambulatory" provisions, as attempting to incorporate into its subject-matter a method of ascertainment and definition of beverage liquors, intoxicating and non-intoxicating, by reference to United States constitutional and Federal statute regulations. Such as are "from time to time determined," thus presenting the accumulating features of unconstitutionality involved in both Donohugh v. Roberts, 11 W. N. C. 186; Com. v. Dougherty, 39 Pa. Superior Ct. 338, above cited, of uncertainty of their existence, inadequacy of means of finding out, and imposing upon members of both bench and bar and also the community at large, presiding, practicing law and operating within the sovereignty of our own State borders, intolerable conditions and burdens of research throughout all the Federal statutes, and even the entire text of the Federal Constitution, for even of the latter no article, section or paragraph is identified in either the title or section of the amendment we have thus construed; such, at least, is our opinion. To sustain such legislation seems to us inconceivable, as tending to a looseness of construction extending beyond the authoritative liberality or authorized by constitutional provisions as expounded by the courts, and which we are unwilling to attest what would appear to be its first precedent in Pennsylvania, leaving that to the appellate courts, if they decide we are wrong.

It necessarily follows from our foregoing conclusions that by reason of the invalidity of the 1st, 3rd and 5th sections of the amending Act of 1921, the sections of the original Act of 1887 thereby sought to be amended and intermediate amendments thereof of 1901 and 1919 are still in force, leaving the amending Act of 1921 of no authority to grant licenses to deal in beverage liquors; and unless other authority therefor exist, we must refuse all the petitions filed for license to sell at retail at least, and it is only the retail dealers who are provided for by either the original Act of 1887 or the amending statute of 1921, as far as the actual grant of licenses are concerned.

Can such licenses be granted the petitioners under the terms of the original Act of 1887?

We are of the opinion they cannot be for two reasons:

First. That all of such petitions omit the requirements of clauses "fifth" and "ninth" of section 5 of the original Act of 1887, which clauses are mandatory; and

Second. That our authority under the Brooks Law of 1887 is superseded and annulled by the 18th Amendment and the "Volstead Act" of Congress in the enforcement thereof. It was for this reason that we refused all retail applications at January Sessions, 1919, in our opinion, which appears as Susquehanna County Licenses, 48 Pa. C. C. Reps. 409, easy of access, and our views there expressed we will not here repeat. However, we feel called upon because of the decisions of Com. v. Vigliotti, 75 Pa. Superior Ct. 366; s. c., 271 Pa. 10, to make a few further supporting observations.

1 D. & C.

The Vigliotti cases are cited by the learned attorneys for the petitioners as judicially sustaining the Brooks Law of 1887 as authority to grant such licenses by the Pennsylvania Quarter Sessions Courts. We cannot so interpret them. In considering their relevancy and application, we must bear in mind that such authority was not the question involved, but rather were the defendants there legally subject to conviction for selling "vinous, spirituous, malt or brewed liquors" under the prohibitory and penal features of the act? Both the Superior and Supreme Courts decided they were, and affirmed such conviction in the court below.

The petitioners cannot, therefore, invoke application of the principle of *stare decisis*, because the judgment of a court of competent or exclusive jurisdiction is not evidence of any matter incidentally cognizable, nor in any manner to be inferred by argument from the judgment. Its conclusive effect cannot be extended by argument or implication to matters not heard and determined, nor to collateral questions not a part of the case: Kapp *v.* Shields, 17 Pa. Superior Ct. 524; Schwan *v.* Kelly, 173 Pa. 65; Siebert *v.* Steinmeyer, 204 Pa. 419.

But it is contended that the reasoning of the opinion of both the Superior and Supreme Courts in the Vigliotti cases support the validity of the license features of the Act of 1887. Again, we disagree and read all that seems to apply here, as *obiter dictum* possibly, significant as supporting our view of the superseding effect of the Federal amendment and legislation.

In the Superior Court we find (75 Pa. Superior Ct. 374) its statement of the defendant's contention "that the provision for the granting of licenses is inseparably connected with the other provisions of the act, and that the legislature would not have enacted the law without its license provisions," [the court] then proceeded (page 375) : "That question is, Did the adoption of the amendment to the Constitution abrogate *all* the law relating to the vending of liquors? . . . It (the Pennsylvania statute) had two purposes: to prevent the granting of licenses to sell to some persons, and to forbid all other persons from dealing in the merchandise described." Judge Henderson then notes the wider scope of this prohibition, applying to all vinous, etc., liquors, which includes both intoxicating and those non-intoxicating, to that of the Federal provisions, *i. e.,* applying to the former only, saying: "It will be seen that none of the prohibitions of Congress are in conflict with the *prohibitory provisions* of the Act of the Legislature of 1887." And the language which follows on the same page, 376, emphasizes the opinion of the court that the license provisions and prohibitory features of this act are clearly severable and the latter unaffected by the Federal law, made especially apparent from the following: "It cannot be questioned that the legislature might have repealed the provisions of the Act of 1887 authorizing the granting of licenses, leaving in force the prohibitory provisions thereof; and if this might have been done, why is not the same result accomplished by the paramount authority of the amended Constitution? . . . Having in view the terms and objects of the State statute, it seems evident that its provisions with respect to licenses are not so dependent on or interlocked with its prohibitory provisions that the authority to grant licenses cannot be abrogated without at the same time overthrowing its prohibitory features."

We discover nothing in the opinion of the Supreme Court in the same case, 271 Pa. 10, contrary to the utterances of the Superior Court's conclusions there expressed or proper inference therefrom.

We will refer to such portions of the opinion of Chief Justice Moschzisker as are urged upon us indicating support of the validity of the entire 1887 Act,

including authority in us to grant licenses, notwithstanding the 18th Amendment and Volstead Act.

True it is he says (at page 15): "We conclude that the Brooks Law still survives as Pennsylvania's own police power method of officially listing and controlling the customary sources of general supply and distribution . . . of those kinds of liquors among which intoxicating beverages are usually found, and she may thus assist in *prohibiting their illegal* use as such. . . . The statute is adapted to serve as an instrument with which to perform, *at least in part*, this State's right and obligation by appropriate legislation [to enforce] the 18th Amendment."

Later, on the same page of opinion, the language to the effect that the prohibitive features of the Brooks Law are not "subordinate" to its license provisions affords the strong inference that he deems them not "dependent upon or interlocked therewith," and is in accord with the same conclusion inversely expressed by the Superior Court, above quoted.

The eminent Chief Justice then concludes (page 16): "The act is capable of serving a useful purpose in preventing the illicit distribution to the people of *intoxicating drinks* by those in control of the usual source of beverage supply."

Concluding, he says: "It is sufficient to say that we find no error in the ultimate conclusions of that (Superior Court) tribunal, represented by its determination of the several cases now before us for review," being the lawfulness of the conviction of the defendants for selling liquors without license under the prohibitory features of the Brooks Law.

It may be we are wrong in our interpretation of the attitude of both the Superior and Supreme Courts in the Vigliotti cases; but it appears logical under the exceptions to the rule of *stare decisis*, and the severability of the license provision and prohibitive features of the Pennsylvania statute, which is recognized by both courts from whose opinions we have quoted, and which we in effect placed upon record in this court at January Sessions, 1919, in a supplementary opinion not published with the original in 48 Pa. C. C. Reps. 409.

In what we have said it is not our purpose to argue either the Superior or Supreme Court out of their position, but to adopt and follow them as we interpret and understand their opinions.

That "intoxicating" liquors are included in the terms "vinous, spirituous, malt and brewed liquors" enumerated in the Act of 1887 is stated by the opinions in both; therefore, unless the Court of Quarter Sessions expressly prohibits the vending of such intoxicants in the license granted, or such inferential restriction arises from the 18th Amendment and Volstead Act, obviously the letter of the Pennsylvania statute and the intention of the legislature enacting it permits such sale.

The proposition thus stated raises several important questions which we will now consider:

First. Would not the act of the court eliminating *"intoxicating"* liquor from the permissive terms of the license granted be an exercise of legislative power by the court, an encroachment on the province of the legislature and for that reason invalid?

Ever since the characteristic utterance by Gibson, C. J., in Greenough *v.* Greenough, 11 Pa. 489, 494, relative to the constitutional distribution and limitation of the three branches of governmental administration, that "every tyro or sciolist knows that it is the province of the legislature to enact, of the judiciary to expound, and of the executive to enforce. These functions may,

1 D. & C.

if the people will it, be performed by a single organ, but the people of Pennsylvania have not so willed it." It has continued a cardinal principle and recognized and applied by the courts, of which particular citations are unnecessary, because of which we are of the opinion such judicial limitation of a liquor license would be beyond court function.

Second. If, under a Quarter Sessions license, either in general terms or thus restricted, the licensee should sell or furnish intoxicating liquor, as defined by the Volstead Act, to persons not included within those prohibited by the provisions of the Pennsylvania statute, we know of no statute or provision thereof of the Pennsylvania Legislature under which the licensee could be prosecuted or penalized; the remedy could be in the Federal courts only, making it manifest to us that, under our interpretation of the license features of the Pennsylvania statute, superseded by the Federal law and its prohibitive and penal features unaffected thereby, it remains as that effective, "appropriate concurrent legislation," and of which it is credited by the courts in the Vegliotti cases and our reasoning and conclusions consistent with our interpretation of them, and from which it naturally follows that the inference of limitation of license in the Pennsylvania statute by reason of the Federal law does not exist, gives effective potentiality to provisions of both and avoids establishing what we deem would eventually prove an embarrassing precedent of construction and interpretation of the Constitution, and is also in line with the previous decisions of the Pennsylvania courts that the license court has no right to place limitations or restrictions upon the licensee not clearly authorized by the statute, such as Com. v. Spence, 230 Pa. 571; Donoghue's License, 5 Pa. Superior Ct. 1.

We would also refuse all retail applications at this time under the Act of 1887, because we are of the opinion no necessity exists therefor "for the accommodation of travelers and strangers;" a fact for our determination under its 7th section, the amendment to which, by section 4 of the "Woner" Act of 1921, being invalid, as we now find as a necessary result of like finding as to section 3 of the same act, as the two are necessarily interlocked and dependent one upon the other: Booth & Flynn v. Miller, 237 Pa. 297, and citations.

While no remonstrances have been filed or evidence taken on this point, we thus determine it, based upon our own knowledge and observation of conditions throughout this county during the past two years, in which there have been no licenses whatever and no serious complaints of their absence, as well as conditions previously known to exist during our continuous practice at the bar of the county from the date of the act, many times representing license applications and also the opposition, in which our opportunities for observation and knowledge have been ample to inform us of the habits and customs regarding the use of beverage liquors by both those residing within our borders and those comprising the "traveling public," seeking, requiring and being afforded "accommodation," and we have noted here a gradual, somewhat rapid and conspicuous diminution of consumption of such liquors and demand therefor; and we have also acquired, as we believe, such knowledge' of the habits and customs of the people residing in all the communities affected by all these applications, together with the foregoing facts and a proper regard for the number and character of the signers upon each petition and the best interests of the community and the county at large, as to warrant our conclusion that a legal necessity for any of such licenses does not exist, bearing in mind that our discretion "is to be exercised primarily for the public good and secondarily for the private interest:" Schlaudecker v. Marshall, 72 Pa.

200, 207. See Raudenbusch's Petition, 120 Pa. 328, in which we have allowed no personal opinion as to the public policy of the existing laws excluded by Indiana County Licenses, 6 Dist. R. 358; Gross's License, 161 Pa. 344, nor of justice or expediency of their enactment or operation, or that such is contrary to any supposed policy or custom or the like, which are always excluded from judicial determination. See cases cited, Vale Digest, vol. VIII, column 24830 B (a).

For the reasons above stated, all the applications for retail licenses are refused, and that of Anthony Suponic, No. 9, January M. S., 1922, because his own testimony shows that with such stock of liquors he proposes to sell candy to children, which comes within the spirit of the prohibition of the entire scope of license legislation in Pennsylvania.

The two applications for wholesale license of Percival G. Kibert and J. Fred Wellbrock, Nos. 27 and 28, respectively, January M. S., 1922, are also refused. These are necessarily under the Act of April 25, 1907, P. L. 122, to which, as we have already said, the "Woner" amending Act of 1921 does not apply, it being amendatory only to the "retail" Act of 1887, and base our refusal upon the same grounds stated in our opinion in Susquehanna County Licenses, 48 Pa. C. C. Reps. 409, supplemented by our reasoning above in the opinion, equally applicable to the Act of 1907, deciding, as we now do, that the latter act is superseded and abrogated as to its licensing features by the 18th Amendment and the Volstead Act of Congress.

We, therefore, for the reasons stated, now enter the following:

And now, to wit, Jan. 24, 1922, all applications for license to sell liquors, either at wholesale or retail, except Nos. 15, 24, 25 and 26, which are withdrawn, are refused; the clerk of this court to file the foregoing opinion and this decree in No. 1, January M. S., 1922, enter this decree in full upon the records of the same, and endorse upon each of the other license petitions, except Nos. 15, 24, 25 and 26, which are withdrawn, and enter of record in each case the following: Jan. 24, 1922, license refused. See opinion and decree filed and entered in License Files No. 1, January M. S., 1922. Exceptions noted and bill sealed.

From Gerritt E. Gardner, Montrose, Pa.