## Devlin v. City of Wilkes-Barre et al.

*Francis J. Murray*, for plaintiff.

*Howard E. Kennedy*, for defendants.

PINOLA, J., July 11, 1949.—We have before us a motion to continue the preliminary injunction granted May 4, 1949, restraining the City of Wilkes-Barre from closing plaintiff's theatre and arresting operators of motion picture machines therein located. Plaintiff contends that the city has no right to require a projectionist's license in addition to that issued by the State.

She is a resident of the City of Wilkes-Barre and operates the Family Theatre on South Main Street, in said city, with the approval of the Bureau of Inspection, Department of Labor and Industry of the Commonwealth of Pennsylvania.

The motion picture projectionists employed by her are residents of this county and hold licenses duly issued by the Bureau of Inspection of the Department of Labor and Industry. The city insists that these projectionists must obtain a license under the provisions of an ordinance adopted February 2, 1915.

The plaintiff contends: (1) That the motion picture board which conducts examinations for such licenses is illegally constituted, there being no ordinance creating the same, and (2) that since the State regulates projectionists and issues licenses to them, the city cannot require an additional license.

The first objection of plaintiff is well taken.

The rules and regulations adopted by the motion picture operators' examining board of the city carry a notation that they are in conformity with the Act of 1909, apparently referring to the Act of May 1, 1909, P. L. 346 (now repealed). That act regulated the construction of booths or enclosures for moving picture machines and provided the specifications therefor. It contained no reference whatever to projectionists.

Under section 46 of the Clark Act of June 27, 1913, P. L. 568, the city was empowered to enact ordinances "not inconsistent with the Constitution and laws of (the) Commonwealth, as may be expedient or necessary, in addition to the special powers in this section granted, for . . . the maintenance of the peace, good government, safety, and welfare of the city . . ." That provision is now contained in section 2403, par. 54, of The Third Class City Law of June 23, 1931, P. L. 932, 53 PS §12198-2403, par. 54.

Assuming that in the absence of action by the State this section gave the city the right to adopt the ordinance in question, nevertheless, a motion picture projectionist cannot be required to undergo an examination or to procure a license under that ordinance, be-

cause the city has not created a proper examining board to function under it.

The ordinance adopted February 2, 1915, provides, section 1:

". . . no person shall operate a moving picture machine within the limits of the City of Wilkes-Barre, unless he shall have first procured a license or permit from the *Bureau of Buildings* to handle pyroxylin plastic, celluloid or other picture films. No such permit shall be issued to anyone under the age of eighteen (18) years nor until the said Bureau of Buildings shall have been convinced by oral or written *examination by the Electrical Board* that the applicant is competent to operate such machine.

"No person duly licensed by the Bureau of Buildings shall operate a moving picture machine unless the following precautions are observed, to wit:

"(a) Moving picture machines shall be enclosed in a fireproof booth constructed and installed in accordance with Act No. 206 of the General Assembly of the State of Pennsylvania approved May 1, 1909, to be approved by the Inspector of Electricity."

Section 3 declares the ordinance to be "necessary for the immediate preservation of the public peace, health and safety . . ."

Counsel agree that a board was appointed by the city council in 1915, and biennially thereafter. The existing board, which consists of Mr. John Galvin, manager of the Comerford Theatre, Mr. Kain Jacobs, who is the representative of the operators, and Mr. Nicholas Macking, presently the electrical inspector of the City of Wilkes-Barre, was appointed by resolution on January 5, 1948, to serve for a two-year period.

The creation of offices by a municipality can only be effected by means of an ordinance. Such power cannot be exercised by a resolution or mere appointment: 43 C. J. 599, §976; 37 Am. Jur. 857.

The board was never properly created and no specific duties were ever assigned to it, nor any powers given to it by the City of Wilkes-Barre. Therefore, it is illegally constituted and the city is in no position to enforce the ordinance of 1915.

In passing, we wish to point out that since the ordinance does not fix the fee for the license, the board could not exact the fee of $3 required by section 3 of its regulations: 3 McQuillin on Municipal Corporations 664, sec. 1097.

This conclusion eliminates the necessity for our consideration of the second objection. However, since counsel request such action we will pass upon it.

The large number of cases in various jurisdictions indicates that the court in Power v. Nordstrom et al., 150 Minn. 228, 184 N. W. 967, properly characterized the present problem as a "vexed question". The cases in other jurisdictions are interesting but not very helpful because whether the legislature has undertaken to occupy exclusively a given field of legislation so that a local regulation with regard to the subject covered may or may not be in conflict with it, is to be determined in every case upon an analysis of the statute and of the facts and circumstances upon which it was intended to operate.

The Administrative Code of June 7, 1923, P. L. 498, sec. 1702, provided:

"The Department of Labor and Industry shall have the power, and its duty shall be:

"(f) To issue licenses, after examination, to motion picture projectionists and apprentices, as may now or hereafter be provided by law;"

In The Administrative Code of April 9, 1929, P. L. 177, the same language is contained in section 2202, 71 PS §562.

The Administrative Code prescribes the powers and duties of all administrative agencies of the State. It

is intended to be and is a general plan of administration of the various branches of the State Government. In this plan provision is made for the licensing of projectionists throughout the State. It is without qualification and without reservation of any right to interfere by any political subdivision of the State. In our opinion, the fact that the legislature included this power in the Administrative Code is quite persuasive of its intent that the State shall occupy the field.

As further evidence of its intent, the legislature included in the Act of April 27, 1927, P. L. 465, provisions for the licensing of projectionists. That act, which repealed the Act of 1909, P. L. 346, provides for the safety of persons assembled in buildings by regulating their construction and maintenance in municipalities other than cities of the first class, second class, and second class A, and empowers the Department of Labor and Industry to make rules and regulations for carrying into effect its provisions.

A careful reading of the act reveals clearly the intention of the legislature, that the State shall occupy the field of protection of its residents from fire and panic.

Section 5 deals with motion picture theatres, and section 6 provides that no building may be used for occasional nontheatrical exhibition of motion pictures unless a permit is obtained from the Department of Labor and Industry. Originally this section did not state from whom the permit was to be obtained. The fact that the legislature passed the Act of May 2, 1929, P. L. 1523, to require that such permit be obtained from the Department of Labor and Industry is another indication that it intended the State to occupy the field.

Section 7, as amended (35 PS §1227), provides for licensing of projectionists. It declares:

"No person shall be permitted to project any motion picture, either theatrical or non-theatrical, until he has obtained a license from the Department of Labor and Industry, after passing an examination prescribed by the said department, for which fees shall be charged as hereinafter provided; and no person shall be permitted in any projection room during any performance, except licensed projectionists, apprentice projectionists, the manager or owner of the theater, or authorized officials of the Department of Labor and Industry. Any license may be suspended or revoked for due cause, but no license shall be revoked until the projectionist or apprentice projectionist has been granted a hearing before the Secretary of Labor and Industry."

(The second paragraph fixes fees for commercial projectionists and nontheatrical projectionists and provides for renewals of licenses.)

By the Act of May 24, 1933, P. L. 996, the original section 7 was amended so as to create two classes of projectionists, namely, commercial and noncommercial.

Section 13 provides, inter alia, that:

*"Prosecutions for violations* of this act, or the rules and regulations of the Department of Labor and Industry, *may be instituted by the Secretary* of Labor and Industry, or under his directions by any authorized representative of the said department, *or by* duly appointed *chiefs of fire departments for violations of the portions of this act, they are especially called upon by this act to enforce* . . ." (Italics supplied.)

The City of Wilkes-Barre has no chief of its fire department, but it does have a chief engineer who performs the duties customarily performed by a chief of a fire department.

Section 15, which relates to enforcement, provides:

"The provisions of this act . . . shall be enforced by the Secretary of Labor and Industry, by and

through his authorized representatives: Provided, That nothing in this act shall be construed as affecting buildings in cities of the first class, second class, and second class A, and that *duly appointed chiefs of fire departments shall be equally responsible* with the Secretary of Labor and Industry *for the enforcement* of the provisions *of this act and the regulations* of the Department of Labor and Industry *pertaining to the removal of obstructions to and maintenance of exits, aisles, passageways, and stairways leading to or from exits in all buildings covered by this act, and the inspection and maintenance of emergency lighting systems, fire alarms and fire extinguishing apparatus.*" (Italics supplied.)

It is crystal clear that the Chief Engineer of the City of Wilkes-Barre has nothing to do with the enforcement of the act or the regulations, except as they refer to obstructions to passageways, the operation of emergency lighting systems, fire alarms and fire extinguishing apparatus. He has nothing to do with the construction of the booths, and he has nothing to do with the operation of the machines therein.

Section 7 provides, inter alia, that "no person shall be permitted in any projection room during any performance, except licensed projectionists, apprentice projectionists, the manager or owner of the theatre, or authorized officials of the Department of Labor and Industry". This prohibition would keep out the chief engineer or any other official of the City of Wilkes-Barre who would try to enter the booth for the purpose of enforcing the ordinance of 1915. This is an irreconcilable conflict which necessarily spells implied repeal of that ordinance.

The Department of Labor and Industry, under its express power to make regulations for protection from fire and panic, has promulgated regulations contained

in five pamphlets. The one dealing with the licensing of motion picture projectionists contains 19 pages. They constitute a full, complete and comprehensive system for the licensing of projectionists. We cannot conceive of anything which the City of Wilkes-Barre could add which would in any way contribute further to the safety of the people of the city through the requirement of a second license.

This ordinance, in our opinion, infringes upon the spirit of the State law. If a city council under the circumstances has the right to require a second license, it would have the equal right to require every undertaker, every doctor, and every dentist to obtain a second license.

In our opinion, the requirement of State licensing for projectionists is part of a whole scheme of the State to protect its citizens from fire and panic. The fire hazard in connection with the operation of motion picture machines is the same all over the State, the protection needed for the patrons in the theatres is the same all over the State, and, therefore, the legislature has the right to require that the regulation of operators be the same all over the State.

As we see it, this situation is not ruled by the case of Brazier v. City of Philadelphia, 215 Pa. 297, which was approved in Commonwealth v. Vigliotti, 271 Pa. 10. While it is true that the Supreme Court sustained the requirement of the City of Philadelphia that the operator of automobiles obtain a city license in addition to the State license, the fact remains that there was something more in the ordinance, namely, the regulation of the speed of automobiles in that city.

We believe that this situation is ruled rather by Girard Trust Co. et al. v. Philadelphia et al., 336 Pa. 433. In that case a bill was filed to enjoin the Bureau of Elevator Inspection of the City of Philadelphia from

inspecting elevators and charging a fee therefor, on the ground that authority to perform this function had been conferred by the Act of April 8, 1937, P. L. 277, upon the Department of Labor and Industry, and that act impliedly repealed the authority of the city. In its findings the lower court held that the evidence was insufficient to establish the existence of purely local problems in the operation of elevators within the city. Distinguishing the Brazier case on the ground that it was evidently the intention of the legislature to permit the existence of complementary local ordinances governing speed because the local legislators knew best their peculiar local conditions, the court said (p. 439) :

"The determination of the safety of elevators, however, is not affected by similar conditions. A particular elevator is designed and intended to carry a certain load with safety whether it is installed in Philadelphia or in a rural district. The determination of whether at any particular time it can perform its intended function with safety likewise does not depend upon its location nor are there any peculiar local conditions which are factors in arriving at such a conclusion."

Like the court in that case, we are convinced that the provisions of the two enactments are clearly repugnant and irreconcilable. Here, if the city is to have the full power and authority to establish standards of safety and provide regulations adapted to that end, we would have two independent administrative agencies with unlimited power to fix conflicting standards governing the same subject matter. They could be made so conflicting as to make operation impossible. Certainly the legislature did not intend that municipal regulations should continue with such a possible result.

By the Act of 1927 the legislature clearly intended to regulate the entire subject matter under a general system and to repeal all other enactments.

Accordingly, we enter the following

*Order*

Now, July 11, 1949, the preliminary injunction heretofore granted is continued until final hearing.